The Chancellor.
If it would be within the proper exer *480 cise of the power of this court to make an order which, by its terms, would, either directly or indirectly, compel the defendant to lower his dam, is this a case in which the power should be exerted ? The dam was raised with the assent of the complainant, he relying on the agreement of the defendant to purchase his farm; and an arrangement was, at the same time, made between them, by which'the complainant was to occupy certain lands of the defendant in lieu of, and as a full compensation to him for the damages he might sustain by the raising of the dam, until the completion of the contract; the use of the said lands by him to continue until the fulfilment of the contract. The dam was raised shortly after the agreement to purchase was entered into, and before the time fixed for the delivery of the deed and payment of the money. The complainant took possession of the lands he was to use as a compensation for damages, and has occupied them ever since and still occupies them. The deed was not,tendered until the fall of 1838. The defendant promised to payrhalf the purchase money shortly, and desired the complainant to wait until the following spring for the residue. Matters remained in this situation for seven years from the date of the agreement, except that the complainant frequently applied to the defendant to pay the purchase money and take the deed.
Under these circumstances, I think the court should not interpose by way of injunction, or order in the nature thereof,
But) should the defendant be permitted to delay indefinitely the fulfilment of his agreement to purchase, because the complainant took possession of lands, the use of which was to be in lieu of damages, and which use was to continue until the fulfilment of the agreement? I think not. It would be a harsh construction of the second agreement to say, that it bound the complainant to wait indefinitely the pleasure of the defendant as to the fulfilment of the agreement to purchase, and that the complainant’s agreement to sell should stand good against him as long as it suited the convenience of the defendant. This could not have been the meaning and spirit of the second agreement $ and it is just and equitable that a limit should be fixed within which the-defendant should pay the money, in fulfilment of his part of the agreement, or the agreement cease to bind the complainant. If” *481 it be said that on the tender of the deed and the omission of the defendant to pay, the agreement for the sale became null, and ceased to bind the complainant, it may be answered, that a court of equity may decree a delivery and cancellation of-an instrument, though it has become a nullity, on the ground that its existence may be a cloud on a party’s title, or may subject him to litigation at a future period when the facts may have become involved in obscurity. 2 Story’s Eq. sec. 705.
In this case, as affected by the second agreement, the danger that the complainant might be subjected to future litigation, after an indefinite lapse of time, particularly if he continues to use the lands he is using in lieu of damages, (and I do not see that he is bound to give them up,) is apparent. And if he should sue at law for damages, he would be subjected to embarrassment while the agreement to sell exists and he continues to use the lands he is using in lieu of damages. The defendant has put the complainant in this position by his failure and fault in not complying with his agreement to purchase; and the complainant should be relieved from this position.
Part of the relief prayed by the bill, that is to say, that a time be fixed within which the%defendant shall pay the money and take the deed, and that in default thereof the complainant’s agreement to sell be decreed to be no longer binding and be given up to be cancelled, will be given. Beyond that, the complainant will be left to his remedy at law.
Order accordingly.