SHOTWELL *vs.* SHOTWELL.

1. Where it appears that a mortgage has been taken, with full notice of a valid conveyance good against the mortgage, but by reason of the registering or recording of the mortgage before the recording of the deed, the former seems to be entitled to priority over the latter, and to subject the latter to it, equity will relieve the land owner from the cloud which the mortgage puts upon his title. But the fact of notice must be clearly proved.

2. Equity will not declare a sealed instrument void, merely for want of consideration, nor will it permit the consideration to be inquired into with a view to setting aside the instrument on that ground. But the want of consideration, if it exists, is a fact proper to be proved in connection with and as part of the evidence of alleged fraud or misrepresentation.

3. Where the cancellation of an instrument is sought on the principle *quia timet*, the complainant must show a title to the relief free from all reasonable doubt, and it must also appear that it is clearly against conscience, that the instrument should be permitted to remain uncancelled.

On final hearing, on pleadings and proofs.

*Mr. A. Ackerson,* for complainant.

*Mr. D. B. Harvey,* for defendant.

THE CHANCELLOR.

On or about the 20th of November, 1866, Phebe R. Shotwell executed and delivered to her son, Archibald A. Shotwell, her bond, dated April 1st, 1862, in the penal sum of $8000, and conditioned for the payment, by her to him, at any time during her natural life, of the sum of $4000, with interest at six per cent. per annum, and at the same time executed and delivered to him her mortgage of the same date, on two lots of land in Hackettstown, in the county of Warren, to secure the payment of that bond. The mortgage was duly recorded on the 21st of November, 1866.

On the 22d of July, 1865, Mrs. Shotwell executed and

delivered to her daughter, Fanny Shotwell, a deed of conveyance in fee simple for one of those lots. This deed was not recorded until the 16th of July, 1867. Fanny Shotwell conveyed that lot in fee simple to her brother, the complainant, by her deed dated January 7th, 1868. The consideration expressed in the first deed was $500; in the last, $1000.

On the 9th of September, 1872—nearly six years after the delivery of the mortgage—the complainant filed his bill in this court, praying that the defendant might be decreed to cancel the mortgage of record, or to deliver it up to the complainant to that end, or that it might be declared to be fraudulent and void, and of no effect as against the land conveyed to the complainant.

This relief is sought on the ground that the mortgage was without consideration; that Mrs. Shotwell was not indebted to the defendant; that she did not knowingly execute the mortgage, but it was obtained by fraud and false representations, and threats of personal violence, made by him to her; and that when the mortgage was executed, the defendant knew of the existence of the deed to Fanny, which was then unrecorded.

The defendant in his answer alleges that the deed to Fanny was wholly voluntary; that the complainant had full knowledge that it was merely voluntary, long before he took his conveyance from Fanny, and that the defendant had no notice of the existence of that deed when he took his mortgage; that the complainant's deed was also merely voluntary; that before and about the time when the mortgage was executed, the defendant and his mother examined and settled their demands against each other, and they then found that there was due from her to him, on the date of the mortgage, April 1st, 1862, the sum of $4000; that she then acknowledged her indebtedness to him in that amount, with interest from the last mentioned date, and to secure it to him executed and delivered the bond and mortgage to him; that the mortgage was executed and acknowledged by her before a commissioner,

and that on the delivery of the bond and mortgage to him by her, he handed over to her the notes, accounts, and demands which he held against her, which had entered into the settlement. He claims that there is due to him on the bond and mortgage all the principal, with interest from the 20th of November, 1866. He denies explicitly the charge that she did not, when she executed the mortgage, know its character, and states that she did know it, and that she and the commissioner fully and freely conversed together in reference to it in the absence of the defendant, and that she deliberately gave him the mortgage, knowingly and understandingly. He denies that its execution was procured by fraud, false representation, or threats of violence, and says, that on the contrary it was obtained in good faith, and that there was not any, the least fraud, false representation, threats, or compulsion used in any way whatever, and that she executed it as her voluntary act and deed, and for the uses and . purposes therein expressed, and that she received full and ample consideration for it.

The principle on which relief is given in cases like the present, is well enunciated in *Martin* v. *Graves,* 5 *Allen* 601. " Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree which justice and the rights of the parties may require." The complainant alleges that the defendant's mortgage was taken with full notice of the existence of the previous conveyance, by deed then unrecorded, of part of the mortgaged premises, by the mortgagor to the grantor of the complainant. He asks, on this and other grounds, that it may be declared to be of no effect as against his property. Where it clearly appears that a mortgage has been taken with full notice of a valid conveyance, good against the mort-

gage, but by reason of the registering or recording of the mortgage before the recording of the deed, the former seems to be entitled to priority over the latter, and to subject the latter to it, equity will relieve the land owner from the cloud which the mortgage thus puts upon his title. He cannot obtain relief by proceedings at law, and he ought not to be required to wait the pleasure of the mortgagee for a litigation by which the rights of the parties may be determined. Besides, where the proof vital to his protection rests in the knowledge and recollection of witnesses, the refusal of the mortgage holder to resort to the courts for enforcement of the lien he claims, may, through the death or removal of those witnesses, render the land owner powerless for his defence. But while equity will entertain a bill *quia timet* with this aspect, it will require clear proof of the fact of notice as a prerequisite to granting the relief, and it will also require that the title to the relief be free from all reasonable doubt. In the case before me, the allegation of notice depends for proof on the testimony of the witnesses, Mrs. Bellis and Dr. Crane, and the complainant. The defendant absolutely and explicitly denies it. The mortgagor, Mrs. Shotwell, does not testify that the defendant had notice. All she says on the subject is, that he had no notice from her. Mrs. Bellis testifies, that about Thanksgiving, 1866, the defendant told her that "Fanny had a deed for the property, and he would fix it all right." She adds, that nothing was said about a mortgage. She says, she cannot say whether it was the last of the fall or the first of the winter. The mortgage was taken on the 20th of November, 1866. It is obvious that this evidence is of no importance on the question of notice. Dr. Crane testifies, that he had a conversation with the defendant after the deed was executed, as the conversation led him to infer; that there was not much said; that the import was, that what the defendant was going to get, would thwart Fanny in her operations. The witness adds, that it was by getting something from Mrs. Shotwell to counterbalance what Fanny had. He cannot fix the date of this

conversation. He thinks it must have been very soon after the deed was made, but cannot say how long, for (he says) these things all were done on the sly. The defendant denies this conversation as related by the witness, but says the latter talked to him about Fanny's having a deed for the property, and says he had the mortgage some time before this conversation. Giving full weight to Dr. Crane's testimony on this head, it cannot be accepted as proof of notice. It is vague and indeterminate. He is unable to give the language of the defendant, and can only give what he says is its import. In the conversation, the defendant may have had reference to the mortgage, and, on the other hand, he may not. Besides, the value of his impressions is impaired by the fact, that more than six years had elapsed between the time of the conversation and the time when the witness testified in this cause. The complainant swears to a conversation which he says took place between him and the defendant at Woodside, (now part of Newark,) some time in the fall of 1865, or winter of 1866, on the occasion of the defendant's visit there, on his return from the west, in which the defendant spoke of the deed to Fanny, and proposed to the complainant that they should join in circumventing her, and suggested, in that connection, that there was a debt of $800, of long standing, due to the complainant from their mother. He adds, that on his declining to join the defendant, the latter said that he would make his mother give him a mortgage on that property, and have it recorded, and as Fanny's deed was not recorded, she would thus be thwarted in her design of obtaining their mother's property to the exclusion of the complainant and defendant. In the first place, the defendant denies that he had this or any such conversation with the complainant, and in the next place, the complainant, who admits that his memory is fickle as to dates, subsequently corrects his statement as to time, by fixing it in the fall of 1866 or winter of 1867, instead of the fall of 1865 or winter of 1866. He says it was on the return of the defendant from the west, but the latter swears that it was not till the fall of 1867 he

returned from the west, and visited the complainant's house at Woodside, and no effort is made to contradict him in this respect. Opposed to this evidence, is the defendant's answer and his testimony. The former cannot be overcome by the testimony of the complainant alone, and I do not find corroboration of the complainant's testimony in that of Mrs. Bellis or Dr. Crane. The evidence on the subject of notice is not sufficient to justify a decree against the defendant on that ground.

It is pretty apparent from the testimony in the cause, that the title which Fanny had was obtained without consideration, by voluntary deed, (the property is sworn to be worth $6000, and the consideration in the deed to her is only $500,) and it seems quite clear also, that whether the conveyance to her was voluntary or for consideration, the complainant's title is in effect an extinguishment of hers as against the mortgage, for the complainant appears to be the owner of Fanny's title, only as trustee for his mother, the mortgagor. In reply to the question, whether his mother had not requested him to get back the property, he said : " I cannot answer the question in that way, I can only do so by explaining the conversation between us. Mother came to me and told me that defendant (she was crying at the time, and much affected,) had just arrived from the west, and threatened to foreclose his mortgage, and she wanted to know what she had best do about it. It was the first I knew he had a mortgage. I told her of the conversation between the defendant and myself at Woodside, and that I did not think he would foreclose the mortgage, but only obtained it of her to keep Fanny from having all her property, and that I would see him, but first I would see Fanny, and buy the property of her, rather than go to law with her, if she resisted. I then sought legal advice as to what I had better do in the case to approach Fanny. I then saw Fanny and bought the property of her as I would of a stranger. I did it for myself, my mother, and my sisters." His sisters appear to be the witnesses, Mrs. Bellis, Fanny, and the wife of Dr. Crane. When he was asked whether his mother did not directly or indirectly fur-

nish him the money to buy the property from Fanny, he refused to answer the question. He claims to have paid Fanny $1000 for the property. As before remarked, it is sworn to be of the value of $6000. The conclusion is quite obvious that the complainant cannot be regarded as the true owner of the property, and that whatever title he has is held in trust for his mother. It is worthy of remark, that the alleged purchase of the property by the complainant from Fanny was made, according to his testimony, because he preferred that course to " going to law with her if she resisted" the attempt to save the property for Mrs. Shotwell. If Fanny was the bona fide owner of the property it is difficult to understand what ground there was for legal proceedings against her in connection with that effort; and again, if she was indeed the true owner by valid conveyance, it was she and not her mother who was interested in resisting the defendant's claim under his mortgage. The testimony of the complainant above quoted, induces the belief that not only was the deed to Fanny entirely voluntary, but surreptitious, and that it was so understood by the complainant, whose purchase of her apparent title was made for his mother, with the latter's money and for her benefit, with a view to and for the purpose of this litigation. Several witnesses testify that after this suit was brought the complainant declared that he was his mother's agent in it, and offered that if defendant would cancel his mortgage he would convey the property to their mother. The defendant swears that the complainant told him he had given Fanny $900 for the property and had got the money from his mother; and the complainant does not deny this statement. If the conclusion just indicated is correct, then the title of Fanny, so far as the defendant is concerned, is extinguished, for it is held in trust for the mortgagor, who cannot set it up against her mortgagee.

The bill states that the mortgage was wholly without consideration, and was obtained by fraud, false representations, and threats of personal violence. There is no attempt to prove any of these charges, except as the complainant claims

that proof of want of consideration sustains the charge of fraud. Whether the mortgage was given without consideration or not is of no importance in this suit, except in that connection. It is a sealed instrument, and this court would not declare it void merely for want of consideration, nor will it permit the consideration to be inquired into with a view to setting aside the instrument on that ground, though it would for the purpose of ascertaining what is due upon it. *Farnum* v. *Burnett,* 6 *C. E. Green* 87, 89. The want of consideration, if it existed, is a fact proper to be proved in connection with and as part of the evidence of fraud or misrepresentation. But the proof does not sustain the allegation.

The responsive denials and statements of the answer on the subject are not overcome. They are repeated by the defendant in his testimony. His statement in his answer and in his testimony, that there was a settlement between him and his mother about the time of giving the mortgage is corroborated by her, as is his statement that the evidences of debt which he held against her, and which were taken into account between them in that settlement, were delivered over to her. She admits that she destroyed them. She was sworn for the complainant, and on cross-examination admitted that she and the defendant talked about her giving the mortgage a dozen times during a period of two months before it was executed. Though she denies that she was indebted to him at that time, yet her testimony is of so contradictory and untrustworthy a character that but little if any weight can be given to her denial. The theory of the complainant is that the defendant then was and always had been his mother's debtor. But this theory is exploded by the fact that it appears that she had, without his knowledge or authority, about April, 1866, collected $800 of his money on a mortgage, which he, when he had gone out west, had left among his papers in her house. He says she has never yet accounted for it; that, though this money was received by her before the settlement, he knew nothing about it when the settlement was made, and it was

therefore not taken into account then. She first denies and afterwards admits that she received this money, and it appears that she receipted for it in his name on the mortgage which was made to him. She admits that the money was his, and alleges that she paid it over to him, but lamentably fails in stating how she paid it. She says she paid it by " giving back" to him a certain wood lot belonging to him, the title to which she held. It is difficult to see how such a transaction could be regarded as payment. Besides, it appears that part of the consideration of this very mortgage was the wood lot referred to, which he had sold and conveyed to the mortgagor. She alleges also that she also gave him for the $800 an assignment of a certain obligation for $1200 against one Aaron Mitchell, but it appears clearly from the testimony that this was his own property, and although it was taken in her name, it was part of the consideration of a sale of land belonging to him and sold by him, of which she held the title, and that she admitted, when that obligation (it consisted of a bond and mortgage) was made, that it was the property of the defendant.

The statement in the bill as to her ignorance of the character of the mortgage she gave to the defendant is not sustained even by her testimony, and is disproved by the testimony of the commissioner.

My consideration of the evidence in this case leads me to the conclusion that the mortgage was given voluntarily, and not through fraud, false representation, or any duress; that the proof would not justify me in holding that the defendant when he took it had notice of Fanny's deed; that that deed was a voluntary deed, without consideration, and that if it were otherwise, and the defendant had notice of it, the title which Fanny held is now held by the complainant in trust for his mother, who is the real complainant in this suit.

This case does not appear to me to be that of a bona fide purchaser seeking to remove a cloud from his title, but seems rather to present the features af an ill-sustained effort on the part of a mother and some of her children, to rid the prop-

erty of the former of an encumbrance which they insist was wholly voluntary, put by her upon it for the benefit of one of her sons. Where the cancellation of an instrument is sought on the principle *quia timet*, the complainant, to be successful, must show a title to the relief free from all reasonable doubt, and it must also appear that it is clearly against conscience that the instrument should be permitted to remain uncanceled.

The bill is dismissed, with costs.