JOHN E. SMITH

*v.*

ADMINISTRATOR OF JOHN SMITH, deceased, and others.

1. The note of a donor is not the subject of a gift.

2. From the mere fact that a child renders service to a parent, the law will not imply a promise to pay. As between them, an express promise must be shown, or circumstances from which a promise must necessarily be implied.

3. This court has power to decree the surrender and cancellation of a worthless negotiable instrument, though a complete defence at law exists; but, to justify a resort to this court, it must appear that the defence at law will be attended by uncertainty, or that the surrender of the instrument is necessary to full relief, or that the person who alone has the right to defend is under a strong bias in favor of the plaintiff.

On final hearing, before the vice-chancellor, on pleadings and upon proofs taken before him.

*Mr. H. B. Herr* and *Mr. G. A. Allen,* for complainant.

*Mr. John N. Voorhees,* for defendants.

THE VICE-CHANCELLOR.

The complainant seeks, by this suit, to restrain the prosecution of certain suits at law, and to compel the surrender and cancellation of the promissory notes on which those suits are founded.

John Smith, of Readington township, Hunterdon county, died intestate, March 19th, 1875. For some years prior to his death his family consisted of himself, two unmarried daughters and a son. On the 13th of March, just six days before his death, and while he was suffering from the sickness of which he died, he made the notes in controversy, being one to each of his three children living at home.

Smith *v.* Smith's administrator.

They were each for $600, payable to the payee or bearer, at one year, without interest, and were drawn at the intestate's request, by a neighbor and friend, who subsequently administered upon his estate.  At the time the notes were signed, the intestate requested the person who drew them to administer upon his estate in case he was taken away.  No settlement or accounting preceded the making of the notes, nor was there any conversation between the intestate and the payees respecting any debt due from him to them.  They had given him their service, and he had maintained them.  The intestate told the person who drew the notes that he wanted him to do some writing for him; that he had no will, and he could do what he wanted to with notes.  He further said, the children to whom the notes were made had stayed with him, and he wanted to do something for them; that he wanted the notes made strong, so they would stand the test; that he owed it to them, it was right, and he wanted them to have them.  The notes were then drawn and signed by the intestate, by his mark, and delivered to one of the payees.

After the intestate's death, the notes were returned to the person who wrote them, and he then added an attestation clause to each, and signed them as subscribing witness. The intestate left seven children, of whom the complainant is one.  Four of them, very shortly after they were notified of the existence of the notes, objected to their payment. Actions were subsequently brought against the administrator, and the main purpose of the present suit is to have those suits perpetually enjoined.

If the notes were intended as gifts, they are of no more value than blank paper.  This is the settled law of this state.

Mr. Justice Van Syckel, speaking for the court of errors and appeals, in *Voorhees* v. *Woodhull's ex'rs*, 4 *Vr.* 494, 498, said: " The note of the donor is not, like the note of a third person, the subject of a gift.  It is a mere promise, and can no more be recovered upon as a gift than the unwritten promise of the donor."  The evidence leaves no room to doubt

37

that the notes were intended as gifts. The drawer mani-- festly meant they should operate as testamentary acts. He said he had no will, but he could do what he wanted to with notes. It is true, he also said that he owed these children; but what did he mean? Is it certain he did not refer to a claim upon his bounty or affection, rather than a legal obligation? He said, in the same connection, that he wanted to do something for them, and then proceeded to select a person to administer his estate. He was not settling with his creditors, but directing the distribution of his estate. No attempt was made to prove an express contract, and no circumstances were shown which afford the slightest ground for presuming a contract between parent and child. Ordinarily, the law presumes a promise to pay from the mere fact that valuable services have been rendered and accepted, but no such presumption arises when the service is rendered by a child to its parent. Between them, to entitle a child to compensation, an express promise must be shown, or circumstances must be proved from which a contract to pay must necessarily be implied. *Ridgway* v. *English,* 2 *Zab.* 409.

There is nothing in the evidence which induces the belief that the parties understood, at the time the notes were made, that the relation of debtor and creditor, or employe and employer, existed between them; but, on the contrary, the circumstances show, quite clearly, that the intestate intended the notes as mere expressions of his bounty. The payees have not attempted, by their own oaths, to show an express contract, or any circumstances from which a promise to pay can be inferred. The weight of the evidence proves that, soon after the testator's death, the person who wrote the notes stated that the intestate intended the notes should be surrendered to him in case he recovered. That was, obviously, a part of the scheme. He manifestly intended that each of the three payees should have $600 more of his estate than the other children, in case he died; but he did not intend to become their debtor in these sums

·in any event. My conclusion is, the notes are of no legal' force.

The power of this court to decree the surrender of an invalid or worthless bond, or other instrument, even though a complete defence at law exists, cannot be questioned at this day. If a suit at law has already been brought, this court will not arbitrarily or causelessly change the forum of litigation, but if adequate relief cannot be given at law, or if the defence is of a character that cannot be urged at law without embarrassment and hazard, this court will take jurisdiction and give suitable relief. *Cornish* v. *Bryan*, 2 *Stock.* 146. "The resort to equity, to be sustained," said Chancellor Kent, "must be expedient, either because the instrument is liable to abuse from its negotiable nature, or because the defence, not arising on its face, may be difficult or uncertain at law, or from some other special circumstances peculiar to the case, and rendering a resort to equity highly proper, and clear of all suspicion of any design to promote expense and litigation." *Hamilton* v. *Cummings*, 1 *Johns. Ch.* 523. Both this court and the court of errors and appeals have declared, that a proper case for equitable relief is presented when it is shown that a suit at law is pending against the representative of a dead person, on a worthless negotiable instrument, not void on its face; for it is said the plaintiff may, when warned that his right to recover will be resisted, discontinue his suit at law, or suffer a nonsuit, defer a subsequent suit until the evidence of the defence is lost, and then sue either the personal representative, or the heir, or devisee, and recover upon mere proof of the papers. In such a case it is obvious no relief short of the destruction or cancellation of the instrument affords full protection. *Metler's adm'rs* v. *Metler*, 3 *C. E. Gr.* 270; *Metler* v. *Metler's adm'rs*, 4 *C. E. Gr.* 457.

These adjudications must rule this case. The equities of the present complainant are much stronger than were those of the suitor in the case just cited.

In that case the person seeking relief in this court was the defendant in the suit at law, and held a position where he had full right, and could have had ample opportunity to defend at law. Here the complainant is not a party to the suit at law, and is powerless to control or direct the defence. A recovery at law will protect the administrator and conclude the complainant, unless he can show fraud. *Pursel* v. *Pursel,* 1 *McCart.* 514. The administrator is necessarily under a strong bias in favor of the validity of the notes. He drew them, witnessed their execution, and knows better than any other person their origin and history. If they are not the device of his mind, he sanctioned the validity of the scheme of which they are the offspring. He thought they would answer the purposes of a will, and the payees aver, in their answer, that he told them he personally knew them to be all right. In the account he filed, exhibiting the condition of the estate, as preliminary to an order for the sale of lands for the payment of debts, he reported them as valid debts—at least he did not report that they were disputed. He subsequently carried them, at the request of the payees, to his own counsel, to have suits brought on them. It is easy to see, in this situation of affairs, that his pride of opinion, his friendship for the payees, and his desire to see the wishes of his dead friend respected, all stand arrayed against his making a vigorous resistance to a recovery on the notes. He occupies a position where, if the defence is committed solely to his direction, he must either betray his convictions of what he believes to be right, and desert his friends, or be faithless to duty. The complainant has, I think, a clear right to be protected against the mishaps and dangers which would almost unavoidably attend a defence conducted by a person thus situated, and which, if once suffered, would, most probably, be beyond judicial cure. A decree will be advised, perpetually enjoining the suits at law, and directing the surrender of the notes for cancellation.

The plaintiffs in the suits at law must pay the complainant's costs.