ISAAC S. JENNINGS et al.

*v.*

EDWARD F. DIXEY et al.

In 1842, Shinn, who was seized of an undivided moiety of a tract of land with Price, agreed to sell his moiety to Price for a certain number of cattle, and in pursuance thereof executed a deed to Price and had it recorded, but Price refused to receive the deed when tendered to him, or to deliver the cattle. In 1855, Crammer, who then owned Price's moiety, and Shinn executed mutual releases for the land, and the release given to Crammer was recorded shortly afterwards, but Shinn did not have his release recorded until 1870. In 1869, Crammer's administrator executed a deed to the defendant, reciting that said Crammer became seized of the one-half of said premises by deed from Shinn, dated and recorded &c. The defendant also claimed the land, or some interest in it, through Ridgeway, to whom Price's heirs-at-law had executed a deed.—*Held*, that the recitals in the deed of Crammer's administrator to himself were enough to put the defendant on inquiry, and further, that he was bound by a statement by one of Price's heirs (his son) to Ridgeway, made when their deed was given, that his father never owned, or claimed to own, the property, and that they (Price's heirs) had no claim on it.

Mr. *B. Gummere*, for complainants.

Mr. *P. L. Voorhees*, for defendants.

BIRD, V. C.

I think the complainants are entitled to the aid of this court in procuring the cancellation of the deed named in the pleadings, executed by Caleb A. L. Shinn to Liberty Price, and in protecting them against the deed made by the heirs-at-law of Price for the lands mentioned in the pleadings.

It is conceded that Shinn was seized of the equal undivided one-half of lot No. 16. It is proved that about the 1st day of January, 1842, Shinn agreed with said Price to exchange his interest in said lands for cattle valued at $90; and that in pursuance thereof, Shinn executed a deed of conveyance to Price, had it recorded, and then tendered it to him. Price refused to

accept the deed or to deliver the cattle. Except an action for damages, that was an end of the matter between Shinn and Price. That deed remained uncanceled of record.

The defendants claim that they have title through this deed to Price, by purchase from his heirs-at-law. They insist that they searched the records as to this title, discovered this conveyance and took it for granted that the title was complete. But the defendants also claim title from Shinn through another channel for some interest in this same land. Let us look at that claim of title and see how it affects the former.

Shinn's title only embraced an undivided one-half. On the 2d day of August, 1855, John Crammer was the owner of the other half; and on that day (more than thirteen years after the execution and registry of the deed to Price) Shinn and Crammer executed releases to each other for the undivided one-half, so that they held in severalty. Crammer soon had the deed given to him recorded. Shinn did not get his deed from Crammer recorded until the year 1870. About twelve years after the execution of the deed to Crammer by Shinn, Crammer died, and on the 16th of January, 1869, Crammer's administrator, Isaac P. Peckworth, made a deed of conveyance to the defendant, Edward F. Dixey, in which it is recited—

"That the said John Crammer, deceased, became seized of the one-half part of the said beach lot by deed from Caleb A. L. Shinn, dated the 2d day of August, 1855, and recorded in the clerk's office of Toms River, in book 9 of deeds, page 340" &c.

Hence it is apparent that Shinn dealt with this land as his own in the year 1855. He then conveyed to Crammer. Through Crammer the defendants claim a portion of these same lands; and hence it seems to me that Dixey could not have traced his title through Crammer without coming to a correct understanding of the fact that the deed to Price never took effect. He certainly would have seen that if Price took title under the deed to him, that then Crammer could not take any title from Shinn. But it is urged that this view would be pertinent if the defendants had not been misled by the record of the deed to Price.

The answer to this is, that there was no occasion for being mis-led. Had they paid the least respect to the law of diligence they would not have been deceived. They were bound to know that Shinn was claiming this land, or an interest in it, in 1855, and in that year conveyed to Crammer. They were bound to know that Crammer treated this land as Shinn's. They could not but perceive that the *status* in 1855 was wholly different from what it was in 1842. How, then, can it be said that the defendants are *bona fide* purchasers without notice?

But Dixey says he thought he was buying the whole of lot No. 16 from Peckworth. This cannot be so, for the deed under which he took title from Peckworth only conveys to him " the equal undivided one-half part." This applies to the first and second descriptions in this deed, the first of which undoubtedly describes the whole of lot No. 16 (two hundred and ninety-six acres), and the second only the northern half (one hundred and forty-eight acres). It is evident that he only took title to the undivided half of the whole, and to the undivided half of the northern half of the whole. Whatever that may include is not decided, nor is it necessary to decide it. It does not include the fee of the whole two hundred and ninety-six acres.

Certainly Mr. Dixey concluded he did not purchase the whole fee of Crammer's administrator, for he takes a deed from the heirs-at-law of Price. Can this avail him? I think not. If the above recitals were not sufficient notice to put him on in-quiry, the positive information given by Samuel Price, one of the children of Liberty, to Mr. Ridgeway, who procured the con-veyance from the Price heirs, leaves no doubt on the point of notice. He says that before he signed the deed he told Mr. Ridgeway that his father never owned, nor claimed to own, the property, and that they had no claims on it.

I will advise that the deed to Price be canceled, and that the deed made by the heirs-at-law of Price be declared null and void, with costs.