Beckett *v.* Heston.

ANNA P. BECKETT

*v.*

ISAIAH M. HESTON.

Equity will relieve against a voluntary deed which has been recorded, but never delivered.

On bill and answer and proofs in open court.

*Mr. Allen B. Endicott,* for the complainant.

*Mr. John W. Wartman,* for the defendant.

GREEN, V. C.

The complainant is a widow, between sixty-five and seventy years of age. She was the owner of a house and lot in the city of Philadelphia and a house and lot in Palmyra, in this state. These two properties constituted her entire estate, and the income

Beckett v. Heston.

from them was her sole means of maintenance and support. She valued the Philadelphia property at $5,000; it was subject to a mortgage of $3,000. The Palmyra property she valued at $3,000, and it was subject to a mortgage of $1,000.

She had had three sons, Alfred, Isaiah the defendant, and another who is dead. The deceased son had left two children surviving him as his heirs at law. The complainant says she had, either by advancement or by becoming security for her son, now deceased, paid on his account what she considered more than the equivalent of his just share in her estate. That having this in view, and being desirous of avoiding trouble, she determined to convey the Philadelphia property to Alfred, and the Palmyra property to Isaiah, the equity of redemption of each being equal, and to take from them some assurance that she would have the control of the properties during her life. That she thought this would have the same effect as making a will, and that it would be a disposition of her property which would distribute it fairly among her children. She executed a deed of the Philadelphia property to her son Alfred, dated April 16th, 1891, and Alfred gave her a declaration of trust, drawn by Mr. Allen B. Endicott, of Atlantic City, dated April, 1891, and acknowledged April 25th, 1891, by which he declares that the property was conveyed to him by his mother to hold the undivided one-half interest or part thereof for himself, his heirs and assigns forever, and the remaining one-half interest or part for his brother Isaiah, but upon the following express condition, viz., that the said Anna P. Beckett during her lifetime shall receive all the rents, profits and benefits of said premises. The deed was delivered by complainant to her son Alfred, and the declaration of trust by Alfred to his mother. Alfred prepared a deed of the Palmyra property from the complainant to defendant and sent it to her. She took it to the office of Mr. Howard Parry, a conveyancer and commissioner of deeds in Burlington county, May 13th, 1891, and under that date executed and acknowledged the same. She paid all the expenses of execution and record, and left the deed with Mr. Parry to have it recorded. He sent it to the clerk's office of Burlington county May 14th, 1891, and it was recorded in Book 290 of Deeds for

that county, folio 589.   Mr. Parry obtained it from the clerk's-
office and sent it by mail addressed to the complainant at Pal-
myra.   The letter enclosing the deed was taken from the post-
office at Palmyra by defendant, who handed the envelope-
containing the deed unopened to his mother.   She says that
prior to the execution of the deed she had explained to her son,.
the defendant, that she had conveyed to his brother Alfred the-
Philadelphia property, and taken from him a declaration of trust,.
and that she was going to convey the Palmyra property to him,
taking from him a similar declaration of trust with reference to-
that property, and that the matter was fully explained.   On re-
ceiving the letter she opened the envelope and said to the de-
fendant, " This is the deed I have had prepared conveying this-
property," but she did not give it to him, nor did she part with-
its possession and control at any time.   She says the defendant
never had it in his hand, except when carrying it enclosed in
the envelope from the post-office, and, in fact, never saw it, and'
in this statement she is sustained by the testimony of the de-
fendant.

Defendant denies having had any such prior conversation with,
his mother.

A declaration of trust with reference to the Palmyra property-
was afterwards prepared by Alfred, he copying the one which-
had been prepared by Mr. Endicott with reference to the Phila-
delphia property.   This was presented by complainant to the-
defendant, and he was asked by her to execute it.   His wife-
objected to his signing the paper, and he then refused, and con-
tinued afterwards to refuse, to sign any declaration of trust or to-
reconvey the property to his mother.

There is no pretence that he ever parted with any considera-
tion whatever, except that he made one or two payments of $3-
each, under an agreement, which was in the nature of rent for-
the property, part of which he and his wife occupied in common-
with his mother.

On his continued refusal the complainant brings this suit, and'
asks, as relief, that she may be decreed to be the owner of the-
said house and lot, and that the said conveyance may be decreed-

Beckett v. Heston.

null and void, and that the said Isaiah M. Heston and Lizzie Heston, his wife, may be required by the decree of this court to convey to her the house and lot, and that the said Isaiah may be restrained and enjoined from conveying, mortgaging, or in anywise disposing of the house and lot, and for other and further relief.

The answer of the defendants denies that they, or either of them, ever knew when the conveyance was made to Isaiah. They deny that they were ever spoken to or consulted concerning the conveyance, and severally aver that the conveyance to Isaiah was made without their knowledge and without any inducement, express or implied. That the first notice they had of the conveyance was in June, 1891, when the complainant said to them, " I have made a conveyance to Isaiah of this property, and put the deed of the same on record at Mount Holly, Burlington county;" that she then told them she had made that conveyance to him in lieu of what she intended he should have of her estate, and that she had distributed her property herself. Defendants admit that Isaiah pretends that he is the owner in fee of the house and lot so conveyed to him, and aver that the absolute legal and equitable title is in him. This property belongs to the complainant. She has not conveyed it to the defendant. It is true she executed a deed and had it recorded, but she never parted with its possession or control. When she left it with Mr. Parry it was as her agent, not as the agent of defendant. By doing so she did not lose her control over it. When she sent it to be recorded it was not with the intention to have the registration operate as a delivery. *5 Am. & Eng. Encycl. L. p. 447 tit. "Deeds" p. 5.* She intended to deliver it when Isaiah executed and delivered to her a declaration of trust, and not before. This is made clear by her conduct when it was returned to her by Mr. Parry. She told Isaiah it was the deed of the property, but she says, and I believe her, notwithstanding his denial, that she had previously told him he was to have it on making a declaration of trust. There is no evidence to show that she then used words indicating the delivery was complete, as in *Foley* v. *Vantuyl, 4 Halst. 153.* These are the only incidents invoked to

33

Beckett *v.* Heston.

constitute a delivery, and are ineffective for that purpose. *Ruckman* v. *Ruckman, 6 Stew. Eq. 354.*

The title not having passed from the complainant, but her ability to dispose of it freely being hampered by her misplaced, but not unnatural, confidence in her own son, can this court give her relief? The defendant has not paid any consideration, nor has his condition in any way been changed to his detriment by the transaction. Equity will relieve against a voluntary deed which has been recorded but never delivered. *Armstrong* v. *Armstrong, 4 C. E. Gr. 357; Cannon* v. *Cannon, 11 C. E. Gr. 316.*

Defendant resists the granting of the relief on the alleged ground that the complainant made this conveyance to Isaiah, and placed it on record for the purpose of cheating her creditors, and that, therefore, she cannot come into this court to seek redress. The question must be met by impartial examination of the evidence and without reference to the fact that it is raised by a son against his own mother. Vice-Chancellor Pitney, in *Pitney* v. *Bolton, 18 Stew. Eq. 639, affirmed, 1 Dick. Ch. Rep. 610* (at *p. 643*), says: "If the transaction be equally capable of two constructions—one innocent and the other unlawful—the familiar rule is that the innocent one will be adopted, especially as against a person who stands on his own confession, without the least merit, and who seeks to make gain by a fraudulent transaction in which he knowingly participated. While the rule upon which the defendant bases this part of his defence—expressed in the maxim in *pari delicto potior est conditio possidentis*—is a wholesome one, and will be observed in all cases clearly within its terms, yet our courts do not appear to have manifested any disposition to extend it by construction, or to apply it to cases not clearly brought within its reach."

On this branch of the case the answer avers that the complainant became involved as maker or endorser of a promissory note of $500, for her son Alfred, and that the conveyance to Isaiah, which is sought to be set aside by this suit, was made for the purpose of defrauding her creditors, as well as to hinder and delay them in the collection of their just debts and demands, and

that she admitted the conveyance was made with the said motive, and that she had made the conveyance at that time for the purpose of avoiding her creditors.

Isaiah, when examined as a witness, says that he had no conversations with his mother respecting creditors. His wife, however, does say that she had a conversation with the complainant, in which she made a statement that gives color to the claim that her object was to delay her creditors. The complainant denies having made any such statement, and, as between the two, I have no hesitation in believing the testimony of the old lady rather than that of her daughter-in-law. This person, I think, is chargeable with the whole difficulty which has arisen with reference to this matter, and has undoubtedly instigated her husband to disregard all sense of filial duty and honesty.

It appears by the testimony that prior to the old lady's conveying the Philadelphia house and lot to Alfred, and, of course, prior to the deed to Isaiah, a suit in attachment had been commenced against her in the State of Pennsylvania, and that such attachment had been levied upon the Philadelphia property, but also that she had given bonds in the early part of April in that suit, which had released it from the attachment, and steps were then taken looking to the settlement of the suit, which was some time during the summer effected by Alfred, who says that he himself paid a little over $200 in settlement of the suit. Complainant is a talkative lady, and when she went with the deed to Mr. Parry's office to execute it, she conversed unreservedly with him with reference to her affairs. She told him that she had had trouble in Philadelphia, and that it was in course of settlement, but that she did not know what would be the result, but I do not find any testimony to indicate that she intended by this conveyance to Isaiah to defraud her creditors.

I believe that she has truly given her real object and purpose in the transaction. I have no doubt whatever that she was worried by the complications resulting from her giving security for her son and its resulting law suit. While she might not have been absolutely certain as to the results of the pending negotiations for settlement, she had taken care of the creditors.

Beckett *v.* Heston.

The testimony is quite meagre, but it appears that the Philadelphia property was attached, and that such attachment had been raised by her giving security. It does not appear that she had any other creditors. She was impressed with the fact that the two children of her deceased son, in the event of her death, would be entitled to one-third of her estate, and this she considered as unjust to her other children, because their father had already received more than his share. She was probably aware of the litigation which so generally follows the disposition of property by a will, and thought it safer to dispose of it while she was living. In doing this, she wanted to divide the property equally between her two remaining sons, and yet retain for herself the income or use of the property during her life, as it furnished her with her only means of subsistence.

I conclude that this deed was not signed by her for the purpose of defrauding creditors, and that complainant is entitled to a decree.