COLTON MANOR COMPANY, complainant-respondent,

*v.*

W. PRICE DAVIS, JR., defendant-appellant.

[Decided May 20th, 1929.]

*Messrs. Bourgeois & Coulomb,* for the defendant-appellant.

*Messrs. Endicott & Endicott,* for the complainant-respondent.

The opinion of the court was delivered by

BODINE, J.

The Colton Manor Company is the owner of a modern hotel-sanitarium on Pennsylvania avenue, Atlantic City. Dr. W. Price Davis, Jr., defendant in this suit, specialized in roentgenology and electric therapeutics. Prior to September 28th, 1925, he owned stock in the Colton Manor Company, which he sold to Henry G. Hodges, who became president of the company and undertook to finance the erection of the sanitarium. Before Dr. Davis sold his stock he and other stockholders of the complainant company had discussed his leasing of certain floor space in the proposed building for offices and laboratories. On September 28th, a lease drafted and executed by the Colton Manor Company was sent to Dr. Davis for execution. He did not execute the lease until June 7th, 1926, when he did so and sent it to the clerk of Atlantic county for record.

In April of 1927, Dr. Davis on the strength of this lease instituted an ejectment suit against the Colton Manor Company. The court of chancery restrained the prosecution of the suit, and the question before this court is the power of the court so to do.

In the case of *Foley* v. *Kirk, 33 N. J. Eq. 170,* this court said: "To compel the surrender and cancellation of written instruments which have spent their force, and are mere nullities, but which, left in an uncanceled state, may becloud a title, or be used for dishonest purposes, is an ancient and well established head of equity jurisprudence. If the instrument was originally valid, but has, by subsequent events, such as satisfaction, or payment, or other extinguishment, become *functus officio,* and the party holding it refuses to surrender or cancel it, the court will compel its surrender, though no present or future use of it, to the prejudice of the complainant, is threatened; for, in such case, its mere existence may seriously cloud the complainant's title, by rendering it possible that ultimately it may be used to overthrow his title, when the facts are no longer capable of complete proof, or have become involved in the obscurities of time. *1 Story's Eq. Jur. 705.* Equity may intervene, even if the instrument is void

by matter apparent on its face, and would be so held at law. But it will not arbitrarily or causelessly change the forum of litigation when an action at law is already pending, and adequate protection can be given in that forum, but if adequate relief cannot be given at law, or the character of the instrument is such that the court can see that, if used in a trial at law, it will be liable to cause embarrassment, or create great uncertainty, or put the party against whom it may be used in great hazard of losing his rights, it will assume jurisdiction and compel the surrender of the instrument, or limit its use to such purposes as may seem to it to be equitable. All that is required to justify a resort to equity, when a suit at law is pending, is that it shall appear that it is doubtful whether the instrument may not be used in such suit for a dishonest or inequitable purpose."

. The facts upon which the court of chancery relied to restrain the ejectment suit and the use of the lease drafted September 28th, 1925, and recorded June 7th, 1926, are these: After Dr. Davis received the lease he did not accept it but began to negotiate for different terms. On October 5th, 1925, the president of the Colton Manor Company requested by letter the doctor to execute the lease as submitted. On November 16th, another letter was written to Dr. Davis' attorney requesting that the lease be returned to the company and that another lease be drafted in accordance with Dr. Davis' ideas for submission to the board of directors of the company. The attorney replied that Dr. Davis was away, that he could not return the lease, and that he could not draw a new one because he lacked instructions from Dr. Davis. On December 3d, 1925, a letter was written by the president of the company to Dr. Davis stating that the lease had not been executed, that it could not then be executed, and further he requested the return of the paper. On December 10th, Dr. Davis wired the president of the company asking if he should have a lease drawn up. The president of the company wired that he should do so. On February 11th, 1926, the president of the company, nothing having transpired in the meantime, wrote Dr. Davis a lengthy letter reviewing the matter and stating: "As the matter stands at the present time you have no space or lease with the Colton Manor Company." No further action

was taken by Dr. Davis and the Colton Manor Company proceeded with the erection and completion of its building without making any provision for Dr. Davis.

It was after this and on June 7th, 1926, that Dr. Davis signed the lease, placed it on record and commenced the ejectment suit in question.

It is apparent that the minds of the parties never met, and that the proposed lease was a mere offer; that Dr. Davis never accepted the offer until after it was withdrawn by the president of the company, and, further, the placing of the lease upon record, if it accomplishes any purpose, does tend to becloud the title of the Colton Manor Company. The facts and circumstances necessary to demonstrate the nullity of the instrument might quite readily cause uncertainty in the trial of an ejectment suit.

The action of the court of chancery is affirmed.

*For affirmance*—THE CHIEF-JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, CAMPBELL, LLOYD, CASE, BODINE, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.