15 N.J. Super. 288 (1951)
83 A.2d 346
EAST NEWARK REALTY CORPORATION, AND ANOTHER, PLAINTIFFS-RESPONDENTS,
v.
THOMAS J. DOLAN, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued August 20, 1951.
Decided September 13, 1951.
*290 Before Judges BIGELOW, DAVIDSON and McLEAN.
Mr. Abe W. Wasserman argued the cause for the appellant (Mr. Paul R. Kleinberg, attorney, and Mr. James E. Masterson, on the brief).
Mr. Raymond W. Troy argued the cause for the respondents (Messrs. Lum, Fairlee & Foster, attorneys, and Mr. Vincent P. Biunno, on the brief).
The opinion of the court was delivered by BIGELOW, J.A.D.
The question is whether the Chancery Division should have dismissed the complaint because it did not show a sufficient basis for equitable relief. These are the facts that the complaint discloses:
The defendant Dolan wished to lease certain land from the plaintiff, East Newark Realty Corporation. To that end, he entered into negotiations with the other plaintiff, Pommer, who had authority from the company to negotiate, but not to reach a final agreement, and Dolan was so advised. On January 27, 1950, Dolan paid the company $250 and was given a paper writing, reading as follows:
"Received from Thomas J. Dolan the sum of two hundred fifty dollars ($250.00) of which one hundred twenty-five dollars ($125.00) is to be applied for rent for the month of February, 1950, and the sum of one hundred twenty-five dollars ($125.00) to be applied for security, under a lease for parking lot on Passaic Avenue, East Newark, N.J., said parking lot being owned by East Newark Realty *291 Corporation. The above money is received by East Newark Realty Corporation subject to the terms and conditions of a lease for said parking lot, to be signed by Thomas J. Dolan and East Newark Realty Corporation.
East Newark Realty Corporation."
A day or two after the date of the payment, the company received certain information about Dolan from which it concluded that he would be an undesirable tenant, and the company thereupon refused to go further in the matter. The transaction never progressed beyond the stage of negotiation; no lease or binding agreement for the renting of the premises was ever entered into by the parties. Upon termination of the negotiations, the company tendered repayment of the sum of $250 and demanded a return of the receipt, but Dolan refused.
Dolan, in April, 1950, instituted an action against the company and Pommer in the Essex County Court. His complaint contains two counts, in one of which he alleged the making of a lease between himself and the company, the payment of $250 pursuant thereto, a demand that the company let him into possession, and a refusal, for which he demands judgment for damages. The second count asks damages from Pommer because he had in fact no authority to enter into a contract of lease on behalf of the company. The Chancery complaint alleges that Dolan intends to offer the receipt in evidence in support of his action against the company.
The complaint in the Chancery Division further charges that:
"The defendant (Dolan), despite the fact that no lease or agreement to lease had been entered into, and despite the fact that plaintiff, Horace Pommer, was not authorized by the plaintiff company to make a lease or an agreement to lease, and that he had never represented that he was so authorized, nevertheless fraudulently instituted the said action at law, to the harassment and vexation of the plaintiffs."
Such is the case made by the complaint in the Chancery Division. Upon it judgment is asked enjoining the further *292 prosecution of the County Court action and directing the cancellation of the receipt above mentioned. Concurrently with the filing of that complaint, a consent order was entered that Dolan's complaint in the County Court be removed to the Chancery Division and consolidated with other action. And it was further ordered that Dolan's complaint need not be answered "until the equitable issues set out in this action (that is, the company's and Pommer's) have been determined and disposed of." The latter action duly came to final hearing in the Chancery Division and resulted in a judgment, decreeing that Dolan deliver up to the company for cancellation the receipt for $250, and permanently enjoining Dolan from the further prosecution of his action and from asserting any claim against the plaintiffs arising out of the transaction above recited. The judgment also directed the return to Dolan of so much of the sum of $250 as might remain after deducting plaintiffs' costs. Pursuant to reservation in his answer Dolan moved, at the trial, that the complaint be dismissed on the ground that it did not set forth facts entitling the plaintiffs to the relief which was demanded in the complaint and later accorded to them by the judgment.
It will be noticed that the complaint does not charge Dolan with any fraud or overreaching in the course of the negotiations or in obtaining the receipt. It does not allege any accident or mistake. Dolan is charged with misconduct only in bringing his action for damages. The institution of the suit is characterized as fraudulent only because, as we understand counsel, Dolan was aware that he had no valid cause of action. In the same sense, a complaint for damages sustained in an automobile accident might be considered fraudulent if the plaintiff were conscious that his own negligence contributed to the happening. In our opinion, the charge of fraud in the complaint before us adds nothing to the respondents' case.
The equitable remedy of cancellation of documents is generally based on fraud or mistake in the inception of the document, but on occasion the remedy is applied even though *293 fraud and mistake are absent. Justice Story, writing in 1835, put this branch of equity on a broad foundation.
"If an instrument ought not to be used or enforced, it is against conscience for the party holding it to retain it; since he can only retain it for some sinister purpose. If it is a negotiable instrument, it may be used for a fraudulent or improper purpose, to the injury of a third person. If it is a deed purporting to convey lands or other hereditaments, its existence in an uncancelled state necessarily has a tendency to throw a cloud over the title. If it is a mere written agreement, solemn or otherwise, still, while it exists, it is always liable to be applied to improper purposes; and it may be vexatiously litigated at a distance of time, when the proper evidence to repel the claim may have been lost, or obscured; or when the other party may be disabled from contesting its validity with as much ability and force as he can contest it at the present moment." Story, Equity, § 700.
Professor Pomeroy introduced his analysis in this wise:
"The jurisdiction of equity to grant the remedy of cancellation exists and will always be exercised when it is necessary to protect or maintain equitable primary estates, interests, or rights; where, however, the estate, interest, or right is legal, the jurisdiction always exists, but its exercise depends upon the adequacy of the legal remedies,  a party being left to his affirmative or defensive remedy at law, where full and complete justice can thereby be done. The occasions giving rise to the exercise of this jurisdiction are mistake, fraud, and other instances where enforcing instruments or agreements would be inequitable or unjust." 4 Pomeroy Equity, 2727, § 1377.
Our own cases fully support the principles so stated. Chancellor Runyon quoted with approval from Martin v. Graves, 5 Allen, Mass. 601 (1863),
"Whenever a deed or other instrument exists, which may be vexatiously or injuriously used against a party after the evidence to impeach or invalidate it is lost, or which may throw a cloud or suspicion over his title or interest, and he cannot immediately protect or maintain his right by any course of proceedings at law, a court of equity will afford relief by directing the instrument to be delivered up and canceled, or by making any other decree which justice and the rights of the parties may require."
Shotwell v. Shotwell, 24 N.J. Eq. 378 (Ch. 1874). Though fraud and mistake were absent, cancellation of instruments *294 affecting real estate titles was decreed in Stevens v. Ryerson, 6 N.J. Eq. 477 (Ch. 1847); Foley v. Kirk, 33 N.J. Eq. 170 (Ch. 1880); Jennings v. Dixey, 36 N.J. Eq. 490 (Ch. 1883), affirmed 37 N.J. Eq. 627 (E. & A. 1883); and Beckett v. Heston, 49 N.J. Eq. 510 (Ch. 1892), affirmed 52 N.J. Eq. 585 (E. & A. 1894). Likewise with negotiable instruments in Smith v. Smith's Adm'r., 30 N.J. Eq. 564 (Ch. 1879); Paterson v. Baker, 51 N.J. Eq. 49, 59 (Ch. 1893); and Canon v. Ballard, 62 N.J. Eq. 383 (Ch. 1901), affirmed except as to costs 63 N.J. Eq. 797 (E. & A. 1902). Much like the case before us were Morgan Realty Co. v. Pazen, 102 N.J. Eq. 33 (Ch. 1927), and Colton Manor Co. v. Davis, 104 N.J. Eq. 452 (E. & A. 1929).
While the power of a court of equity to order a bond or other instrument to be delivered up for cancellation cannot be questioned, the court will refuse this extraordinary relief unless the circumstances require it. Where an action at law has been commenced and the defense at law is complete, cancellation will generally be refused. "In all cases, the court must exercise a sound discretion, and be regulated in its action by the propriety of the particular case before it." Cornish v. Bryan, 10 N.J. Eq. 146 (Ch. 1854); Smith v. Smith's Adm'r., supra. On this principle, the bill was dismissed in Ellicott v. Chamberlin, 37 N.J. Eq. 470 (Ch. 1883), affirmed 38 N.J. Eq. 604 (E. & A. 1884); Chase's Ex'r. v. Chase, 50 N.J. Eq. 143 (Ch. 1892); Reeves v. McCracken, 69 N.J. Eq. 203 (Ch. 1905), affirmed 73 N.J. Eq. 729 (E. & A. 1908); Ciccarelli v. Hofmann, 90 N.J. Eq. 94 (Ch. 1919), and Ollendorf v. Hirsch, 119 N.J. Eq. 225 (Ch. 1935).
Ordinarily the instrument cancelled is a deed or integrated contract; but a paper which is merely evidence may be the subject of the court's decree. Vanderbilt v. Mitchell, 72 N.J. Eq. 910 (E. & A. 1907).
In the case at bar, if Dolan had moved to dismiss the Chancery complaint immediately it was filed, we assume the motion would have been granted, since the material allegations *295 of the complaint in the Chancery Division could equally well have been presented by answer in the County Court. The whole purpose of the Chancery complaint seems to have been a change in the forum, from the County Court to the Chancery Division. But instead of asking that the complaint against him be dismissed, Dolan consented that proceedings on his own complaint be stayed "until the equitable issues set out" in the Chancery complaint "have been determined and disposed of." While the term "equitable issues" is employed, clearly what the parties intended was that all the issues that might be raised on the Chancery complaint be tried first. The pretrial order shows what the issues were:
"(a) Whether an oral lease or an oral agreement to make a lease was made on or about January 24, 1950, between plaintiff company and the defendant, or whether the transaction constituted negotiations which were never consummated;
(b) If agreement as to terms of a lease was reached about January 24, 1950, whether the parties were to be bound at any time before it was reduced to writing and signed;
(c) Whether all of the essential terms of the intended lease had been settled;
(d) Whether plaintiff company terminated the negotiations on learning of defendant's criminal conviction."
The Chancery complaint was filed May 12, 1950. Not until February 15, 1951, when the parties appeared with their witnesses for the trial, did Dolan move to dismiss. The objection that there is an adequate remedy at law ought ordinarily be raised in limine or it will be regarded as waived. Estate of Gilbert Smith v. Cohen, 123 N.J. Eq. 419 (E. & A. 1938). It seems to us clear that Judge Stein soundly exercised his discretion when he denied the motion, received the evidence and disposed of the controversy on the merits. To do otherwise would have put the parties back to where they were a year before, awaiting an answer to Dolan's complaint. There was no error in the denial of the motion.
Dolan's second and last contention on the appeal is that the judgment, even though it rightly directed cancellation of the receipt, should not have enjoined the prosecution *296 of his action which had been instituted in the County Court. We have already quoted the issues as set forth in the pre-trial order. The Chancery Division decided those issues in favor of the respondents and left no basis for Dolan's complaint and the injunction followed as of course. Lane v. Rushmore, 123 N.J. Eq. 531 (Ch. 1938), affirmed 125 N.J. Eq. 310 (E. & A. 1939). The court might instead have formally entered judgment for the respondents in Dolan's action; but the result is the same. Dolan says that the injunction has deprived him of a trial by jury. But a jury is never drawn in the Chancery Division unless a party asks for one. He did not ask for a jury and so the issues properly were determined by the trial judge.
The judgment will be affirmed.