The Mayor and Aldermen of the City of Paterson

v.

Elizabeth D. Baker.

1. The judgment of a court of competent jurisdiction, on a question of fact or law, has the effect, as between the parties and their privies, so long as it remains unreversed, to put the matter adjudged at rest forever and for all purposes.

2. There is a difference between the effect of a judgment when it is set up in a second action, founded on the same claim or demand on which the first

4

City of Paterson v. Baker.

action was founded, and when it is set up in a second action, founded on a different claim or demand from that on which the first action was founded. When the second action is founded on the same claim or demand the judgment is conclusive, not only as to all matters which were actually litigated and decided, but as to all which might have been; but when the second action is founded on a different claim or demand, the judgment is conclusive only as to such matters as were actually litigated and determined.

3. The doctrine that a judgment concludes the parties forever, in respect to the subject-matter of the suit, is not a mere rule of procedure, to be enforced only in cases where a defeated suitor attempts to litigate anew a question once decided against him, but a rule of justice, which must be enforced whenever its enforcement is necessary for the protection and security of rights.

4. A court of equity may compel the surrender of an invalid negotiable instrument.

5. A suitor asking for the surrender of such an instrument may prove its invalidity by any evidence competent for that purpose.

On final hearing on bill, answer and proofs.

*Mr. Thomas C. Simonton, Jr.*, for the complainant.

*Mr. Samuel C. Mount*, for the defendant.

VAN FLEET, V. C.

The object of this suit is to compel the defendant to surrender two bonds for cancellation. The complainant rests its right to the relief it asks on the following propositions: That by a judgment pronounced by the supreme court of this state, in November, 1882, it was adjudged that the defendant's testator was not the *bona fide* owner or holder of the bonds in question, and as the complainant has paid the full value of the bonds to their true owner, and as they are negotiable and still unmatured, and thus in a condition which puts it in the defendant's power to impart full validity to them, by making sale of them to an innocent purchaser for value, justice can only be done and wrong prevented by compelling the defendant to surrender the bonds. The claim is, that although the bonds are worthless in the defendant's hands, yet, in consequence of their negotiability, she may nevertheless dispose of them in such manner as to make them valid in the hands of an innocent third person, and will,

in that event, deprive the complainant of the immunity to which, by the judgment of the supreme court and its own act in making payment, it is entitled.   If it be true that the effect of the judgment of the supreme court and the payment to the rightful owner is to render the bonds in the hands of the defendant without legal force as against the complainant, then it is manifest that nothing short of their surrender will put it completely out of the power of the defendant to commit the wrong against which the complainant asks protection.

The dispute in this case had its origin in the following facts: The complainant, in April, 1865, issued two hundred coupon bonds for $500 each, payable to bearer on the 1st day of December, 1897, bearing seven per cent. interest, payable semi-annually on the first days of June and December of each year.   About the time of their issue one John Petrie purchased several of these bonds, among them the two numbered 535 and 542.   The two so numbered were stolen from Petrie's dwelling about the 1st of January, 1866.   Public notice of the theft was given in April, 1867.   Subsequently, and some time prior to 1870, the complainant, on proof of the theft, and after receiving a bond of indemnity, paid Petrie the full value of the two bonds.   In 1873 or 1874 Petrie heard that the stolen bonds were in the possession of one James Baker, and shortly thereafter visited Baker, and tried, without success, to find out how and where Baker had obtained them.   When the coupons attached to these two bonds, falling due December 1st, 1874, were presented for payment, payment was refused.   Nothing further was done by either party until May, 1881, when Baker brought suit against the complainant in the supreme court to recover the amount due on thirteen coupons attached to each of the stolen bonds.   To a declaration, containing a special count on the twenty-six coupons and the common counts, the complainant filed a plea of the general issue, but subsequently, on a demand for particulars, specified as the ground of its defence that Baker was not the *bona fide* owner and holder of the bonds to which the coupons sued on were attached.   On the issue thus made up a trial was had, resulting in a verdict for the complainant and against Baker, on

City of Paterson *v.* Baker.

which judgment was entered in November, 1882. That judgment still stands in full force. No attempt was ever made, so far as appears, to arrest or reverse it. Baker died in March, 1885, leaving a will, which has been admitted to probate, and under which the defendant, besides becoming his executrix, takes all his personal property. She is his widow. With respect to the bonds in question, she stands in the right of her testator and precisely where he did. She admits that the bonds came into her possession on his death as part of his estate. So she merely succeeded to his rights. If the bonds were worthless in his hands, they are equally valueless in hers.

The first and most important question presented is, is it true, that it was adjudged by the supreme court, in the suit just mentioned, that the defendant's testator was not the *bona fide* owner or holder of the instruments in question ? In other words, that they were invalid in his hands as against the complainant. If so, that question is *res judicata* between these litigants. For, in my judgment, nothing is better settled, as a principle of jurisprudence, than that the judgment of a court of competent jurisdiction, on a point of law or a question of fact, or on a question of blended law and fact, does, so long as it remains unreversed, have the effect, as between the parties and those standing in privity with them, to put the question or matter adjudged at rest finally and forever and for all purposes. The principle and the reason on which it rests were stated by Chief Justice Shaw, in *Sawyer* v. *Woodbury, 7 Gray 499, 502,* as follows : " It is a principle lying at the foundation of all well-conducted jurisprudence, that when a right or a fact has been judicially tried and determined by a court of competent jurisdiction, the judgment thereon, so long as it remains unreversed, shall be conclusive upon the parties, and those in privity with them in law or estate. The ground of such principle, we think, when rightly understood, is, that the judgment presents evidence of a fact of so high a nature, that nothing which could be proved by evidence *aliunde* would be sufficient to overcome it ; and therefore it would be useless for a party against whom it can be properly applied to adduce any such evidence, and accordingly he is

estopped or precluded by law from doing so." There can be no doubt, then, that if the complainant's right to relief in this suit rests upon the same point or question which, in essence and substance, was litigated and determined in the suit at law, the matter in controversy here must be regarded, as between these parties, as having been finally and conclusively settled by the judgment at law, and to stand *res adjudicata*. After judgment final, in case no appellate proceedings are taken, in the words of Mr. Justice Field, in *Bissell* v. *Spring Valley, 124 U. S. 225, 236,* " the fact and the law are adjudged matters between the parties, and not open, therefore, to any further contest."

Now, while it is true that the suit at law was not founded on the bonds which the complainant, by this suit, asks to have surrendered, but rested wholly on certain coupons issued with the bonds in question here, still, it does not at all follow that the point or question litigated and determined in the suit at law is not, in every essential respect, the same precisely that the defendant attempts to agitate in this suit. There is a plain difference, resting on obvious considerations of justice, as was held in *Cromwell* v. *Sac County, 94 U. S. 351,* and again in *Bissell* v. *Spring Valley, supra,* between the effect of a judgment, as a final and conclusive determination of the rights of the parties, when it is set up in a second action resting on the same claim or demand on which the first was founded, and its effect, when it is set up in a subsequent litigation between the same parties, founded upon a different claim or cause of action. In the first, where the second suit is based upon the same claim or demand involved in the first, the judgment in the first must be treated as a finality, " concluding," in the language of Mr. Justice Field, in *Cromwell* v. *Sac County, supra* (at *p. 352*), " parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. Thus, for example, a judgment rendered upon a promissory note is conclusive as to the validity of the instrument and the amount due upon it, although it be subsequently alleged that perfect defences actually existed, of which no proof

was offered, such as forgery, want of consideration or payment. * * * But where the second action is upon a different claim or demand, but between the same parties, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered. In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action, not what might have been thus litigated and determined, for it is only upon such matters as were actually litigated and determined that the judgment is conclusive." And Chief-Justice Shaw, in stating the same principle, in *Sawyer* v. *Woodbury, supra,* said (at *p. 502*) : " It is not necessary that the action in which it [the judgment] is found, and that in which it is relied on as an estoppel, should be of the same kind, or for the same cause of , action. If a question upon the execution or validity of a deed in fee be put in issue in an action of trespass, and expressly found by the jury, such verdict and the judgment upon it, may be relied on as conclusive evidence of such fact, on the trial of a real action or writ of right, between the same parties, for the same estate. It has become a fixed fact between these parties for all purposes."

The cases in which a judgment pronounced in a prior action has been held to conclude the parties and unalterably determine their rights in a second, though the claim or demand involved in the second was entirely different from that which was involved in the first, are too numerous to be reviewed or even cited. But a few will be referred to for the purpose of showing how the doctrine has been applied in the practical administration of justice. *Bouchaud* v. *Dias, 3 Denio 238,* is a leading case. It has been cited with approval as often as any other. In that case the plaintiff and defendant became sureties on two bonds executed by a third person to the United States for the payment of the duty on certain imported goods. The bonds, though given for different sums, and payable at different dates, were executed at

the same time, upon the same consideration, and as parts of the same transaction. The plaintiff, after paying the bond which. fell due first, sued the defendant for contribution, and the defendant interposed a plea that the obligee, with the written consent of the plaintiff, had, by deed, released him from all liability. The plaintiff demurred, and, after argument, judgment was pronounced in favor of the defendant. The plaintiff then paid the other bond and sued again for contribution, claiming, however, only a moiety of his last payment. On the trial of the second action, the defendant put in evidence the judgment in the first. The court held that, as the judgment in the first suit was directly upon the point involved in the second, the plaintiff stood concluded. Chief-Justice Bronson, in delivering the opinion of the court, said (at *p. 243*): " It is true that there is a shade of difference between the two cases as to the necessary proof on the part of the plaintiff to sustain the action. Different bonds are mentioned in the two declarations, but so far as relates to the principal question in controversy, to wit, the right of the plaintiff to demand and the duty of the defendant, as a co-surety, to make contribution, the two cases are precisely alike. The defence is precisely the same in both actions. The matter which the plaintiff now attempts to agitate is *res judicata.*" In this case a distinction was attempted to be drawn between the effect which should be given to a judgment resting on an admission of a matter of fact made by a party by his pleading, and that which should be given to a judgment grounded on a fact proved or admitted *ore tenus*, but the court held that there was no difference in principle between the foundation of the two judgments, and that an admission made by way of demurrer to a pleading, in which the facts were alleged, was just as available as though made by the party, orally, in open court. *Gardner* v. *Buckbee, 3 Cow. 120,* in its leading facts, is like *Bouchaud* v. *Dias*, and *identical in result.* In *Beloit* v. *Morgan, 7 Wall. 619*, the material facts were, that the defendant, Morgan, had purchased certain coupon bonds issued by the town of Beloit. After his purchase, the town denied its liability, claiming that the bonds had been issued without authority of law. The bonds

matured at different dates.   Morgan sued at law on the first that
fell due; the town defended and was defeated and judgment was
entered against it.   Morgan then sued on his other bonds and
the town filed a bill in equity to enjoin the suit at law and to
compel the surrender of the bonds.   Morgan answered that the
question as to the validity of the bonds was *res judicata*, and the
court so held.   Mr. Justice Swayne, in delivering the opinion of
the court, said, in substance, that the judgment of a court having
jurisdiction of the parties and the subject-matter of the suit, is
conclusive, not only as to the *res* of that case, but as to all fur-
ther litigation between the same parties touching the same sub-
ject-matter, though the *res* itself may be different.   *Bissell* v.
*Spring Valley, 124 U. S. 225,* is in all essential points exactly
like *Beloit* v. *Morgan,* except that the subject-matter of both the
first and second suits in the former were coupons and not bonds.
In the first suit it was held that no recovery could be had be-
cause the bonds to which the coupons sued on had been attached
and with which they were issued, were void instruments.   A
second suit was then brought by the same plaintiff on other cou-
pons issued with the same bonds, and the court held that, as the
question in respect to the validity of the bonds had been litigated
and adjudged in the first suit, the judgment in that case con-
cluded the parties and put the question as to the validity of the
bonds, so far as the parties were concerned, forever at rest.   The
facts in *Cromwell* v. *Sac County, 94 U. S. 351,* were held to war-
rant the application of the principle under consideration in its
other aspect.   In this case the first suit was brought by one
Smith on over-due coupons attached to certain bonds issued by
the defendant.   Cromwell, the plaintiff in the present suit, was
the owner of the coupons sued on, and also of the bonds with
which they had been issued, so that Smith's suit was in fact
Cromwell's, being founded on a debt due to him and not to
Smith.   Smith did not claim that he had become the owner of
the coupons on which his action was founded, before maturity,
*bona fide* and for value, nor of the bonds with which the coupons
had been issued, and neither his right nor that of Cromwell in
that regard was litigated or adjudged in Smith's suit.   In de-

City of Paterson *v.* Baker.

ciding Smith's suit the court held that the bonds, as well as the coupons attached to them, had been disposed of in such manner and under such circumstances as rendered them invalid against the defendant, except in the hands of a *bona fide* holder for value, and that, as Smith had not shown that he was such holder, judgment must be given for the defendant. Cromwell then sued on four of the bonds and sixteen other coupons, alleging that he had purchased them in good faith, before maturity, and for value. To defeat this action the defendant interposed the judgment against Smith, and proved, in addition, that the suit in which that judgment had been recovered, though brought in the name of Smith, was founded on coupons belonging to Cromwell, and was prosecuted for his use and benefit. The court held, that although Smith's suit was in truth Cromwell's, and consequently that the judgment rendered in it should be given the same force and effect against Cromwell that it would have been entitled to if he, by his own name, had been the plaintiff in the second, yet, inasmuch as his present suit was founded on a different claim or cause of action from that on which the suit in Smith's name rested, and, as he alleged in this suit, an entirely new ground for a judgment in his favor, a ground not litigated or adjudged in the previous suit, the prior adjudication did not cut off or bar his right to a recovery on such new ground.

This summary of some of the leading cases shows, I think, that it is now established, beyond dispute or doubt, that the judgment of a court of competent jurisdiction, on a question of law or fact, or on a question of mixed law and fact, once litigated and determined, is, so long as it remains unreversed, conclusive upon the parties and their privies, not only as to the particular property involved in the suit in which it is pronounced, but as to all future litigation between the same parties or their privies, touching the same subject-matter, though the property involved in the subsequent litigation is different from that which was involved in the first. As I understand the principle established by the decisions, all that is required, in cases where the prior and subsequent litigations involve different things, to render the judgment in the first conclusive upon the parties in the subsequent,

is that there shall be substantial identity in the subject-matter of the two, and that must always be the case, as is obvious, where the judgment in the first rests on a decision of the same question substantially which is presented for decision by the subsequent.

And that, in my judgment, is the exact condition of affairs existing here. Although the position of the parties in this suit is reversed, the complainant here having been the defendant in the action at law, and, although the property involved in this suit is different from that which was involved in the action at law, still, it clearly appears that the subject-matter of the two litigations is substantially the same, and that the question presented for decision by this suit is, in substance, the same that was decided in the action at law. The evidence adduced on the trial of the action at law has, by consent in writing, been offered and read as part of the testimony in this case. From that and the specification of the defences, it appears, clearly and satisfactorily, that the vital issue involved in that suit, and which the jury, by their verdict, were required to determine, and did determine, was whether or not the plaintiff, James Baker, was the *bona fide* holder for value of the coupons upon which his action rested. The jury found that he was not, and that finding forms the foundation of the judgment pronounced in the suit. The coupons sued on were attached to the two stolen bonds when the bonds came into the possession of Baker. Each bond, with the coupons thereto attached, constituted, at that time, one single instrument as a commodity of trade or commerce. Baker obtained the two bonds, with the coupons attached to each, by the same means, at the same time and in the same way, so that his title to both the bonds and the coupons was precisely the same, and stood in point of law and of right, as to each, on exactly the same foundation. It follows, necessarily, as I think, that a judicial declaration, made in the due course of the administration of justice, that Baker was not the *bona fide* holder for value of one or more coupons attached to each of the bonds, is equally efficacious in invalidating his title to the bonds themselves, unless in a suit on the bonds or in a suit to compel their surrender is is shown that he purchased them in good faith, before maturity,

and paid a valuable consideration for them. Nothing of that kind has been shown in this case. If the bonds were due and the parties to this suit were reversed, and the defendant now here was seeking, in a court of competent jurisdiction, to enforce the payment of the bonds, there can be no doubt, I think, under the authorities, that the judgment against her testator, in the prior action, would constitute a perfect bar to her suit, unless it was shown that her testator had a better title to the bonds than he had to the coupons on which his action was based.

The doctrine under consideration is not a mere rule of procedure, limited in its operation, and only to be enforced in cases where a defeated suitor attempts to litigate anew a question once heard and decided against him, but a rule of justice, unlimited in its operation, which must be enforced whenever its enforcement is necessary for the protection and security of rights and for the preservation of the repose of society. That a court of equity has power to compel the surrender of a worthless or invalid bond, or other instrument, which is negotiable and unmatured, and consequently in a condition to be used to the prejudice of the person who executed it, is a doctrine too familiar to need the citation of authorities in its support. The bonds in question are unmatured and negotiable, and hence in a condition to be used, at any time during the next four years, to impose an obligation on the complainant which it ought not in justice to bear. They have been paid to their true owner. The complainant was not obliged to pay them, but it was at liberty to do so, and its act in that regard, in this instance, was, as subsequent events have shown, in the interest of right and justice. This payment, according to the judgment of the supreme court, was a good payment as against the defendant's testator, and discharged the complainant, so far as the defendant's testator was concerned, from all liability on the bonds, and entitled it to their surrender. A suitor asking for the surrender of a worthless instrument, which may be wrongfully used to his prejudice, may establish its invalidity by any evidence competent for that purpose. In this case that fact has been established by the judgment of the supreme court. No fact can be proved by higher evidence.

The complainant is entitled to a decree.