The controversy between Isaac G. Mendel and Florence Mendel on the one side, and Berwyn Estates on the other, has been in litigation since September 7th, 1928. The matter was before me on final hearing, on application to open final decree, on intermediate motions and arguments, and for the closing of title after a decree for specific performance; and twice before the court of errors and appeals. It is high time that it be brought to an end.
It will serve no useful purpose to repeat the facts which have already been stated in opinions filed by me in May, 1929, July, 1930, and in December, 1930. The first two are reported in104 N.J. Eq. 416, and 106 N.J. Eq. 485, under the title "Eckhouse v. Berwyn Estates;" the third is unreported but will be found in the file "Mendel v. Berwyn Estates," Docket69 p. 499.
Pursuant to the final decree the complainants executed and delivered to the Berwyn Estates on January 20th, 1931, a warranty deed containing the same recitals as to restrictions of record as were inserted in the contract of sale.
On the following day the Berwyn Estates started suit against Isaac G. Mendel in the Essex county circuit court on two counts, viz., (1) a breach of the warranty against encumbrances by reason of the restrictions, restrictive covenants and neighborhood scheme of restrictions; and (2) damages to the building because of the failure of the vendors to make repairs necessitated by a fire which destroyed part of the roof.
The Mendels thereupon filed a bill of complaint to enjoin the circuit court action and to foreclose the purchase-money mortgage given to them by the Berwyn Estates at the closing of title.
The Berwyn Estates then filed a petition praying for the staying of the foreclosure action until its law action is determined; and moved to dismiss the Mendel bill.
I am of the opinion that the application of the Berwyn Estates should be denied; that the foreclosure action should be permitted to proceed, and that the suit at law brought by the Berwyn Estates should be permanently enjoined.
All of the issues raised by the Berwyn Estates in the *Page 13 
complaint filed in the circuit court have been very fully considered and determined in this court and in the court of errors and appeals. The matters of the restrictions, restrictive covenants and neighborhood scheme were argued in the court of errors and appeals and decided adversely to the contention of the Berwyn Estates.
The question of the liability of the Mendels for the damage caused by the fire was before me on a petition filed by the Berwyn Estates in answer to a petition filed by the Mendels in which the Mendels sought an order directing the Berwyn Estates to perform the final decree. In their counter-petition the Berwyn Estates said: "The fire caused considerable damage to the upper part of the building, especially the roof, and as a result of the fire about three-fourths of the roof was destroyed, causing said roof to be open to the elements. By reason of complainants remaining in possession of said premises they were charged with the trust and duty of properly maintaining and protecting said building in the same state that same was in at the date of the contract. In absolute and negligent disregard of their duty as aforesaid, the complainants failed to take any measures, to protect said building against further damage by the elements, which protection they could have afforded the building at an expenditure of a mere two or three hundred dollars. The damage caused by said failure and neglect of said complainants is very extensive and amounts to about $3,600."
I filed the following memorandum in disposing of the petition:
"As to the question of waste, the contract itself discloses that at the time it was executed the building on the premises had been partially destroyed by fire and that it was the intention of the defendant to raze that building. Under these circumstances no objection can be made because the defendant did not make such repairs as would protect the building from the elements; in fact, the contract itself specifically provided that the complainants should be under no obligation to do so. I will advise an order directing the defendant to perform before me on a date to be fixed in the order." *Page 14 
And on January 6th, 1930, an order was made in this court to the following effect:
"The court having considered the defendants' counter-claim to said petition, and it appearing that said agreement between the parties specifically provides that the complainants should be under no obligation to protect the building on the premises herein from the elements, * * *.
"It is further ordered, adjudged and decreed, that the defendants' counter-claim to the complainants' petition herein be, and the same is hereby dismissed."
All of the matters complained of in the action at law are resadjudicata.
"All that is necessary," said the court of errors and appeals in In re Walsh's Estate, 80 N.J. Eq. 565, "is that the right to relief in the one suit shall rest upon the same point or question which, in essence and substance, was litigated and determined in the first suit, and in such a case the parties and those in privity with them are concluded, `not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'"
In that case the court said also, "Lord Rosedale once said it was more important that an end should be put to litigation than that justice should be done in every case."
See, also, the summary of the leading cases on the doctrine ofres adjudicata by Vice-Chancellor Van Fleet in City ofPaterson v. Baker, 51 N.J. Eq. 49.
In Putnam v. Clark, 34 N.J. Eq. 532, the court said:
"If, after decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction. Such suit at law is treated as contempt of court, for it is gross oppression to vex another with a double suit for the same cause of action."
It would be intolerable to permit a suitor endlessly to litigate and relitigate his alleged grievance. At some point in the controversy he must accept the award of the court as final and conclusive, and that point is reached when a court of *Page 15 
competent jurisdiction has heard and considered all that has been or could have been said by way of evidence and argument on the issues raised in the pleadings, and handed down its decision, and the decision remains unappealed. See Windolph v. Lippincott,107 N.J. Law 468. To continue a course of litigious and contentious conduct by the institution of additional actions is not only grossly oppressive to the adversary, but an imposition on the court. It is an exhibition of contumacy meriting severe censure and further persistence in this line of conduct will very likely result in severe punishment for contempt.
Even assuming that the action at law were maintainable, there would be no good reason here to enjoin the foreclosure suit to await the outcome of an action at law unless it be shown that the recovery at law is apparent and that irreparable harm will result unless it is stayed. Furthermore, the court will not interfere if there is a mere allegation of an outstanding title or encumbrance, and no eviction threatened nor ejectment brought, and if the damages are not substantial. Van Waggoner v.McEwen, 2 N.J. Eq. 412; Hile v. Davison, 20 N.J. Eq. 228;Price's Executors v. Lawton, 27 N.J. Eq. 325; affirmed by the court of errors and appeals in 28 N.J. Eq. 274; Kuhnen v.Parker, 56 N.J. Eq. 286; Berla v. M. L. Holding Co.,105 N.J. Eq. 592; affirmed, 107 N.J. Eq. 598.
I shall advise an order in accordance with the foregoing conclusions. *Page 16