The complainant in these proceedings was the solicitor for Hazel Rushmore, the wife of the defendant Samuel W. Rushmore, in certain matrimonial proceedings brought by her against her husband. This bill of complaint is brought by the complainant to enjoin Samuel W. Rushmore and Sigmund C. Bernstein, his attorney, from proceeding with a pending action at law in the supreme court, Union county, wherein Rushmore as plaintiff charges the complainant, Merritt Lane, and Hazel Rushmore, with a conspiracy between them, and with instituting and prosecuting in bad faith and with dishonest purpose and by fraudulent means said matrimonial causes against him.
At the conclusion of the complainant's case upon the final hearing the defendants offered no testimony and rested.
On April 25th, 1931, the complainant as solicitor for Hazel Rushmore brought an action for separate maintenance in this court against her husband, the defendant Rushmore, in which there was entered an order for maintenance and counsel fees and the required payments were made and no appeal was taken. The advisory master who heard the matter, in an opinion which he rendered, advised dismissal of the bill for maintenance on August 18th, 1932, but in the final decree dated October 5th, 1932, the defendant Rushmore was directed to pay the cost of taking the depositions and certain fees for handwriting experts. Upon appeal from the decree dismissing her bill of complaint an application was made to the court of errors and appeals for a continuance of alimony pending the appeal which was denied, but the expense of printing the case was allowed and later the decree dismissing complainant's maintenance bill was affirmed by the court of errors and appeals.
On January 2d 1934, a second action for maintenance was brought on behalf of Hazel Rushmore against her husband, the defendant. On January 26th, 1934, Rushmore answered *Page 534 
and on the same date also petitioned the court for a divorce from the bonds of matrimony. Again the wife was on February 26th, 1934, awarded temporary maintenance and counsel fees. The second bill for maintenance, and the husband's petition for divorce, were by order of the court consolidated, and came on for hearing before Advisory Master Grosman, who, on June 22d 1934, ordered the husband to pay temporary alimony, which he paid, and on June 23d 1934, advised decree in favor of the wife, dismissing the husband's petition for divorce. Rushmore appealed to the court of errors and appeals and on January 10th, 1935, that court affirmed the decree of this court. Under the said final decree, testimony was ordered taken on the subject of alimony. The master to whom it was referred reported and exceptions to the report were filed and argued before the advisory master, who, on December 10th, 1935, made his order in connection therewith. In the meantime, defendant Rushmore procured evidence upon which he founded proceedings to vacate the final decree for maintenance. In the meantime, between December 10th, 1935, and December 18th, 1935. Mr. Lane, the complainant in the present proceedings, withdrew as solicitor for Hazel Rushmore. On December 24th, 1935, the court directed the husband to pay the wife $500 counsel fee which he paid.
The defendant Rushmore appealed from the order made by Advisory Master Grosman on December 10th, 1935, to the court of errors and appeals. The order was one for counsel fees and the appeal was eventually dismissed because in the meanwhile the complainant, Merritt Lane, accepted from Mr. Rushmore $4,250 instead of the $5,000 counsel fee allowed in full settlement thereof.
On August 11th, 1936, Advisory Master Grosman advised a decree in which he found that the wife, Hazel Rushmore, did commit adultery at various times during the months of October, November and December, 1935, and in that decree the final decree dated June 29th, 1934, the supplemental order awarding alimony to the wife dated January 10th, 1935, together with the bill of complaint filed January 2d *Page 535 
1934, were ordered vacated. That decree on its face shows that Mr. Rushmore moved before the court to have Mrs. Rushmore repay and reimburse him for his expenses incurred in procuring the transcripts of all the testimony and costs and counsel fees theretofore awarded since in the decree there was a clause to that effect, and that clause as appears from the decree in evidence before me, was deleted by the court. The suit at law seeks to recover these moneys which the court of chancery refused to award to him.
The action at law sought herein to be enjoined was commenced by Rushmore on July 9th, 1937, by his attorney, the defendant Bernstein. It is therein charged that Merritt Lane and Hazel Rushmore "combined, planned and conspired together to extract from the plaintiff [defendant Rushmore] large sums of money * * *," and the acts alleged in execution of the conspiracy are the various proceedings in this court. It charges that the complainant and Hazel Rushmore "falsely charged" Rushmore with the acts described in the said proceedings and "deliberately and consciously withheld from the court of chancery" material facts which, had these facts been discovered, would have proved that Hazel Rushmore had no just cause of action; that Hazel Rushmore "with the aid and advice of the defendant Merritt Lane," continued the suits in chancery, "for the aforesaid purpose of mulcting moneys from this plaintiff [defendant Rushmore];" that as a result of the suits in this court the defendant Rushmore was obliged to expend large sums of money in the complaint mentioned for alimony, counsel fees, printing and fees to his own attorneys.
Complainant contends that the proceedings in the matrimonial causes between the Rushmores are res judicata, and also barred by the principle of collateral attack; that the action at law is vexatious and brought in bad faith for the purpose of harassing and oppressing the complainant, and that as an incident to the exercise of this court's jurisdiction it should determine and adjudicate any controversy which may exist between the defendant and the complainant Lane, with reference to the subject-matter of the action at law. *Page 536 
On the other hand, the defendants contend that neither of said principles has any application; that, for this court to interfere, in the exercise of its injunctive power, would be to act without, and in excess of, its jurisdiction, and, in any event, to overstep the exercise of proper discretion.
The facts not being disputed, the questions presented are questions of law.
The action at law being predicated upon an alleged conspiracy on the part of the complainant, Lane, and Mrs. Rushmore in the institution and prosecution of the aforementioned matrimonial causes, any adjudication by this court that either of the parties in said causes under attack acted in good faith in instituting and prosecuting the same is dispositive of that issue.
It appears from the record in evidence that in the proceeding for divorce filed by Samuel Rushmore (consolidated with his wife's suit for separate maintenance), the fundamental question raised was whether the wife's suit for separate maintenance was brought and carried on in good faith, and we decided that question in the affirmative. So also the allowance of counsel fees to Mr. Lane in both suits for separate maintenance must have been predicated upon the determination by this court that the same were brought and carried on in good faith. Moreover, the allowances of counsel fees were acquiesced in by Rushmore, for in the first cause no appeal was taken, and in the second he made payment of a lesser sum in satisfaction of the court's order and then withdrew his appeal from that order. The issues tendered by the complaint at law were thus anticipated by Rushmore in this court and determined adversely by the decrees and orders of this court.
Generally speaking, this court may not interfere where the plea of res judicata is available to the defendant at law. Yet, exception to this rule developed from early times, it being held that where the former adjudication was had in this court we will enjoin subsequent litigation in the court of law, and will not relegate and confine the defendant to his legal defense. The exception to the rule will be further discussed hereafter. *Page 537 
The application of res judicata occurs in two classes of cases: (1) in which a party having had his day in court, comes in again seeking relief for the same cause of action, and (2) where a party whose rights have once been adjudicated, initiates a new controversy involving issues passed upon by the court in the original contest. In the former, the outcome of the prior controversy is a complete bar even though the issues tendered in the second action may be such as were neither formulated nor treated before, while under the latter, the operation of resjudicata is confined to matters actually determined or necessarily involved in the prior adjudication. In the former "it is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose. * * * But where the second action between the same parties is upon a different claim or demand, the judgment in the prior action operates as an estoppel only as to those matters in issue or points controverted, upon the determination of which the finding or verdict was rendered." Cromwell v. County of Sac, 94 U.S. 351;34 L.Ed. 193, 197, 198; In re Walsh's Estate (Court of Errorsand Appeals), 80 N.J. Eq. 565.
The fundamental issue raised by the complaint at law is whether the matrimonial causes in this court were undertaken by Hazel Rushmore and the complainant, Lane, her solicitor, in good faith, or whether they acted in conspiracy to defraud the court and make malicious use of its process.
That issue of good faith was actually litigated and determined by this court, as appears from the record of those causes. For example: The petition filed by Rushmore against his wife for divorce charged her with desertion. The defendant Rushmore, as I have said, evidently anticipated the objection that the statutory period of two years had not expired if the time during which the earlier proceedings in chancery were pending were excluded, and so he alleged in his petition as follows: "When said bill of complaint was *Page 538 
filed by her, as aforesaid, the said proceeding was not bonafide and was brought and prosecuted in bad faith in that the defendant knew that she had condoned the supposed acts of cruelty set forth in said bill of complaint, in that with knowledge of the same, she had renewed matrimonial cohabitation with petitioner on the 15th day of February, 1931, * * * and that on the 16th day of February, 1931, defendant, without just cause or excuse and with intention to remain away and not come back, deserted petitioner, all of which acts of condonation and renewed matrimonial cohabitation and conjugal kindness and desertion, defendant fraudulently, and with intent to deceive, omitted on her part to present and failed to disclose to this honorable court in said cause, and with knowledge of said facts, she did thereafter prosecute her said cause." Again in the second pending suit for separate maintenance it was charged that Rushmore rejected bona fide offers by his wife to return to him and that she had tendered herself willing to do so, it was alleged by Rushmore in his petition that "letters were not written in good faith nor with the bona fide purpose on the part of the defendant to return to the home of your petitioner and cohabit with him as man and wife." The wife in her answer denies "that said proceedings were not bona fide and were brought and prosecuted in bad faith. * * * She denies that she fraudulently and with intent to deceive, or otherwise," omitted or failed to make full disclosure to the court of any matters which in fairness and justice she should have disclosed, "and that said cause was prosecuted bona fide." She also denies that the letters written by her offering to return "were not written in good faith or with the bona fide purpose on her part to return to the home" of her husband. And finally the wife alleged "that from the 25th day of April, 1931, until the 27th day of September, 1933, she was engaged in litigation in this court and in the court of errors and appeals with her husband, which litigation she was prosecuting during that period of time bonafide."
The issues thus raised in Rushmore's petition for divorce (consolidated with the wife's then pending suit for separate *Page 539 
maintenance) were tried, and in disposing of such issues we held: "It follows therefore that in order to conclude that the complainant's initial suit was not brought in good faith, it must in fact have been `a sham and a pretense;' that the charges leveled against the defendant in that proceeding were merely a figment of the complainant's imagination, incapable of proof to her knowledge and advanced by her maliciously for the purpose of publicly embarrassing and humiliating the defendant. Such is not the fact.
"This court in disposing of the original proceedings found that the defendant was guilty as charged of the extreme cruelty attributed to him but that the complainant had condoned his offense. The judgment of this court against the defendant was `guilty but forgiven.' This is a far different proposition from a finding of not guilty because the accusation was false."Rushmore v. Rushmore, 12 N.J. Mis. R. 575, 583;174 Atl. Rep. 469; affirmed, 117 N.J. Eq. 451. In the cited case we further held that we were "satisfied that the original action was not brought in bad faith and that the time consumed during its pendency cannot be computed as part of the period of desertion." And that the allowance by this court in its final decree of a counsel fee to complainant's solicitor militates against the contention that the first suit was brought in bad faith and that while ordinarily counsel fees by way of costs are allowed to the prevailing party that "on occasion such are allowed to a defeated litigant but only where the court feels that the action was brought in good faith."
Nor is this the only adjudication on the question of good faith. The advisory master to whom was referred the wife's first bill of complaint for separate maintenance although he decided the bill of complaint should be dismissed granted the application of Mr. Lane for allowance of a counsel fee in the sum of $3,000 over objection on the part of the solicitor for the husband on the ground that the suit was brought in bad faith. Thus the charges made in the complaint at law so clearly duplicate the issues raised in this court that a trial at law of the same issues, if permitted, would amount to a *Page 540 
retrial of the issues and evidence fully considered and determined in this court.
But counsel for the defendants argues that the decrees of this court are not res judicata and are neither subsisting nor final orders such as are entitled to be given conclusive effect in subsequent proceedings; that the action at law is not the same cause litigated in this court and involves another subject-matter and seeks different relief; that the complainant, Merritt Lane, was not a party in the suits in chancery.
The contention that the decrees of this court are not final and subsisting adjudications in which it was determined that the matrimonial causes instituted by Hazel Rushmore were brought in good faith, is not tenable. The decree dismissing Mr. Rushmore's petition for divorce was entered despite his claim that his wife's pending suit for maintenance was brought in bad faith. By that decree it was adjudicated that the husband's charge of bad faith was unfounded. That decree was subsequently affirmed by the court of errors and appeals and forever puts that question of bad faith at rest. So, too, the orders allowing counsel fees to the complainant, Lane, as solicitor for the wife, necessarily establish the good faith of the wife's litigation. Allowances may be granted to a defeated party but never to one who sues in bad faith. Then, too, the first allowance was paid, and the time for an appeal from that order allowed to expire. With respect to the second allowance, the counsel fees there granted were settled by the payment of a lesser sum pending an appeal from that order, which appeal was then withdrawn by consent. These determinations are not lacking in the element of finality and are as effective to-day as they were when entered by the court, unimpaired by subsequent adjudications resulting from the wife's subsequent marital misconduct.
With respect to the argument advanced that the action at law is not the same cause litigated in this court and that it involves another subject-matter and seeks different relief. I conclude that it is not essential to the complainant's case that it be established that the causes of action at law and in equity be identical to invoke the principle of res judicata. *Page 541 
As already stated hereinabove it is sufficient if it be established that in an earlier cause of action there was actually brought in issue, litigated and determined, a question sought to be tried anew in a subsequent case. The issue at law is the alleged bad faith of Mrs. Rushmore and her solicitor, Mr. Lane, the complainant herein, in commencing and prosecuting the matrimonial causes. That issue was tried and adjudicated in this court. No distinction has been suggested and indeed none exists between the issue of good faith as determined by this court and that raised in the complaint at law.
The court of errors and appeals of this state in McMichael v.Horay, 90 N.J. Law 142, determined that an action seeking damages for the alleged conspiracy of the plaintiff in a former suit involves the same cause of action, as well as the same issues of that former suit, with the result that the initial judgment bars the subsequent inquiry, even though new issues may in fact be tendered and different relief sought. The late Chancellor Walker in delivering the opinion of the court said:
"The thing most prominently appearing upon the state of the record before us is that the appellant is precluded from recovery by estoppel of record, that is, by the judgments recovered against him in the three suits by the respondents in the Camden District Court. These judgments operate to defeat the appellant's present suit res judicata. It is true that the respondents' suits against the appellant were for damages for trespass, and that appellant's present suit against respondents is for damages for alleged conspiracy, and the procuring of false testimony to be given in the very suit in which the recovery by the respondents against the appellant was had. These matters alleged and relied upon by the appellant were available to him as defenses in the trespass suits brought by the respondents. * * *
"Vice-Chancellor Van Fleet, in City of Paterson v. Baker,51 N.J. Eq. 49, quoting from Cromwell v. Sac County,94 U.S. 351, said (at p. 53 of 51 N.J. Eq.) that parties and those in privity with them are concluded, not only as to every matter offered and received to sustain or defeat the *Page 542 
demand, but as to any other admissible matter which might have been offered for that purpose. * * * Again, the same vice-chancellor, in the same case, quoting from Beloit v.Morgan, 7 Wall. 619, said (at p. 56 of 51 N.J. Eq.) that the judgment of a court having jurisdiction of the parties and the subject-matter of the suit is conclusive, not only as to theres of that case, but as to all further litigation between the same parties touching the same subject-matter, though the res
itself may be different. The doctrine of the City of Paterson
v. Baker was approved by the court of errors and appeals in Inre Walsh's Estate, 80 N.J. Eq. 565, 569, 570."
The further argument of counsel for the defendant that the complainant, Lane, was not a party in the suits in chancery is somewhat misleading as it affects the instant case and cannot be accepted as a wholly correct statement. It is true that a solicitor in a cause is not a party to it in the same sense as a complainant or defendant, but he is a party thereto in his own right, as an "unpaid solicitor."
It was held in Ferraro v. City Hall Garage, 94 N.J. Law 209,211, by the court of errors and appeals that "by force of the statute (Attorneys' Lien act, P.L. 1914 p. 410) the plaintiff's attorney after action is commenced becomes a party in interest in the litigation. This interest cannot be successfully ignored by the litigants. Any payment, therefore, made by a defendant to a plaintiff in a pending cause of action without the consent of the latter's attorney, is made at the defendant's peril."
In matters relating to the allowance of counsel fees, the solicitor is regarded as a party. If his participation in the cause is determined to be in bad faith, he is not entitled to and will not be allowed a counsel fee as compensation. As already indicated hereinabove the allowance of a counsel fee to Mr. Lane was in fact an adjudication that he acted in good faith and that his services merited reward.
In Flavell v. Flavell, 15 N.J. Mis. R. 167;189 Atl. Rep. 639, we said: "The respondent's argument in support of her first contention is that the petitioner, in his capacity as *Page 543 
solicitor, is obviously not a party to the suit in the same sense as the complainant or defendant; that in respect to costs and counsel fees, he is accorded no standing by law because these items are payable not to the solicitor but to his client. Not so. It is true that costs and counsel fees are allowed in right of the litigant, but they are payable to the solicitor. * * * It is true that a solicitor in a cause is not a party to it in the same sense as a complainant or defendant, but he is a party thereto in his own right, as an `unpaid solicitor.'" The interest of the solicitor is such that a reconciliation of the parties pending matrimonial suit does not bar application of the wife's solicitor for allowance of costs and counsel fee against the husband.Morrison v. Morrison, 122 N.J. Eq. 233.
The further argument that complainant, Lane, was not a party to the suit in this court seems to be that even if it was therein adjudicated that Mrs. Rushmore brought her suits in good faith such adjudication would not bind her husband in a suit against Mr. Lane, a third party. Omitting for the present the adjudication of good faith implicit in the award of counsel fees to Mr. Lane, that argument is without merit since the charge at law is a conspiracy between Mr. Lane and Mrs. Rushmore to mulct the defendant Rushmore, by the bringing of the matrimonial suits in bad faith. There being but two alleged conspirators, neither can be held if the good faith of one is established. If Mrs. Rushmore stands acquitted of the charge of bad faith in this court, Mr. Lane is likewise acquitted.
The authorities seem to agree that an attorney cannot be sued for instituting and maintaining groundless actions by means of perjured testimony where the client's good faith in this regard has been established by a verdict in the client's favor. "A person against whom judgments have been obtained cannot maintain an action for damages against the parties who obtained them, the attorney who prosecuted and the officer who served the writ, for fraudulently conspiring together to injure and defraud him in those proceedings, while the judgments remain unreversed * * *." Black *Page 544 on Judgments (2d ed.) 444. (Italics mine.) It should here be noted that the decree which awarded maintenance to Mrs. Rushmore was subsequently vacated, not reversed. That decree was set aside not because of any error in law or fact but only because Mrs. Rushmore by her subsequent marital misconduct forfeited the benefits which she took under that decree. It is significant that the forfeiture related only to future maintenance.
The record in evidence of the matrimonial proceedings and the oral evidence before me in the present proceedings establish the fact that the matrimonial suits brought by Mr. Lane on behalf of Mrs. Rushmore against the defendant Samuel Rushmore, were brought in absolute good faith, and I so find.
Now as to the jurisdiction of the court of chancery to enjoin the prosecution of vexatious and oppressive litigation carried on in bad faith. In the instant case the fact that the action at law is wholly without merit is clearly established before me. The good faith of the complainant was not only established in the prior adjudications of this court but also by his testimony now before me at final hearing. I am satisfied from the evidence that the defendants, Rushmore and Bernstein, at the time of the commencement of the action at law knew that the charges which they made against the complainant, Lane, were baseless in fact and in law. This appears to me not alone from a consideration of the records of the earlier litigation but also from the admissions made by the defendant Bernstein, when a witness before me at final hearing.
"The doctrine of res adjudicata rests on strong reasons of public policy, and also of private right. If, after decree in equity, a party shall proceed at law for the same matter, equity will restrain him by injunction. Such suit at law is treated as contempt of court, for it is gross oppression to vex another with a double suit for the same cause of action." Putnam v. Clark
(Court of Errors and Appeals), 34 N.J. Eq. 532, 535.
Injunction to restrain an action at law will lie where the subject-matter thereof has been considered by the court of chancery, and the same issues determined against the defendant.Logan v. Flattau, 73 N.J. Eq. 222. *Page 545 
"The doctrine [res judicata] under consideration is not a mere rule of procedure, limited in its operation, and only to be enforced in cases where a defeated suitor attempts to litigate anew a question once heard and decided against him, but a rule of justice, unlimited in its operation, which must be enforced whenever its enforcement is necessary for the protection and security of rights and for the preservation of the repose of society." City of Paterson v. Baker, supra.
It would be intolerable to permit a suitor endlessly to litigate and relitigate his alleged grievance. At some point in the controversy he must accept the award of the court as final and conclusive, and that point is reached when a court of competent jurisdiction has heard and considered all that has been or could have been said by way of evidence and argument on the issues raised in the pleadings, and handed down its decision.Mendel v. Berwyn Estates, 109 N.J. Eq. 11. Here, as was said by the court of errors and appeals in In re Walsh's Estate,supra, "All that is necessary is that the right to relief in the one suit shall rest upon the same point or question which, in essence and substance, was litigated and determined in the first suit, and in such a case the parties and those in privity with them are concluded, `not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose.'" The protection afforded by the rule invoked and applied in the Berwyn Estates Case and the PutnamCase (both supra) and the other cited cases is available alike to client and solicitor.
There is, in this case, however, a further reason why the solicitor should be sustained in his application to this court for relief. As one of our solicitors he is an officer of this court, charged with those duties and responsibilities which traditionally belong to his office, and at all times subject to our scrutiny and amenable to our discipline. We have ever been ready to give audience to those aggrieved at our solicitors and in those instances (fortunately few) where dereliction or misconduct was proved we were prompt in expressing *Page 546 
condemnation and meting out punishment. Our bar fully realizes its accountability to the chancellor on matters falling within the sphere of his jurisdiction and it is inconceivable that once misconduct be adjudged in this court a contrary result could be sought in the law courts. The corollary is equally true. When we have once approved the professional conduct of a solicitor, whether that approval be in the form of a direct adjudication or be implicit in some other finding, our holding cannot be diluted or defeated by any conflicting holding in any other forum, save only in our court of last resort and there only by direct review — not as attempted here by collateral attack. Any other rule of law would lead to utter confusion and would tend to undermine both the power and dignity of the court. It is probably this idea which underlies the statement of Vice-Chancellor Van Fleet inPutnam v. Clark, supra, that such action as Mr. Rushmore is attempting (to relitigate at law matter already adjudged in chancery) constitutes a contempt of court.
Our solicitors, with whom we are ready to deal so effectively when they offend, have in natural justice a claim upon our protection when injury is sought to be done them elsewhere because of their proper conduct in our court. We expect our solicitors to be forceful and aggressive in the assertion of rights and the prevention of wrongs and we cannot tolerate any conduct on the part of a defeated litigant which is nothing short of an attempted reprisal against the victor's counsel, a reprisal which, if permitted, would tend to intimidate our bar and impair its independence.
I have thus far dealt with the facts before me impersonally, not pausing to consider that the victim of Mr. Rushmore's assault is one of our outstanding practitioners, conspicuous for his high talent and professional probity. The protection sought by the complaining solicitor and justly due him is due in no less measure to the humblest member of the profession. All members of the bar stand upon a parity before the court.
I cannot, in the light of the newspaper interview given by Mr. Rushmore, and the manner of its publication (respecting his suit at law) in evidence before me, escape the conviction *Page 547 
that his purpose is to injure the complainant's reputation and thereby to satisfy his thirst for revenge. Can anything be more irreparably injurious, particularly where the reputation sought to be undermined is one built upon years of tireless professional labor and fidelity to the best traditions of the profession? Deeply resentful at his wife and unforgetful of his early defeats at her hands his bitterness easily transposes itself to those who served her, and in his eagerness to retaliate he cared not what means he employed nor whom he injured. I have not been able to read the proofs furnished at final hearing without feeling and concluding that Mr. Rushmore's purpose in suing at law was to harass and vex the complainant and, to the extent possible, publicly mortify him. That by the institution of the suit he partly accomplished his vengeful purpose is no reason why he should be permitted to persist in that course. Our injunction will prevent further wrong and injury. A perpetual injunction will be awarded. Decree to be settled on notice. *Page 548